United States Court of Appeals,

Fifth Circuit.

No. 96-41089.

In the Matter of Ruben R. SMITHWICK, Jr.;  In the Matter of Debbie Smithwick, Debtors.

GREEN TREE FINANCIAL SERVICING CORPORATION, Appellant,

v.

Ruben R. SMITHWICK, Jr.;  Debbie Smithwick, Appellees.

Sept. 8, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES, EMILIO M. GARZA and PARKER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Green Tree Financial Servicing Corporation appeals the district court's affirmance of the bankruptcy court's decision that its Local Rule 3020(d) provides the appropriate post-confirmation interest rate on Green Tree's oversecured claim.  We reverse and remand.

The Debtors, Ruben Smithwick, Jr. and Debbie Smithwick, entered into a Retail Installment Contract with Green Tree in May 1994 for the purchase of a mobile home.  The Contract provided for an interest rate of 12.75 percent.  The Smithwicks filed for bankruptcy protection on February 15, 1995 and submitted a proposed Chapter 13 plan, listing Green Tree's debt in the amount of $10,000.00.  Green Tree filed its secured proof of claim in the amount of $12,774.24.  Green Tree also filed objections to the Smithwicks' plan on the grounds that it did not provide for the

1

full payment of its claim including payment at the rate of interest specified in the Contract. Thereafter, the Smithwicks proposed an amended plan to provide for payment of Green Tree's claim in the amount of $12,774.24 at an interest rate of 11.00 percent.

Green Tree continued to object to the amended plan, arguing that the appropriate post-confirmation interest rate was the 12.75 percent as specified in the Contract. The bankruptcy court decided that the appropriate post-confirmation interest rate was 11.00 percent as provided for under the bankruptcy court's Local Rule 3020(d).[1] Green Tree appealed and the district court affirmed.

Section 1325(a)(5)(B)(ii) specifies that:

(a) [T]he court shall confirm a plan if—

&ast; &ast; &ast; &ast; &ast; &ast;

(5) with respect to each allowed secured claim provided for by the plan—

(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

This provision requires that the debtor provide the secured creditor "with payments, over the life of the plan, that will total the present value of the allowed secured claim... ." *Associates Commercial Corp. v. Rash*, --- U.S. ----, ---- - ----, 117 S.Ct.

---

[1] Local Rule 3020(d) of the United States Bankruptcy Court for the Southern District of Texas states:

The interest or discount rate on deferred payments made through a confirmed Chapter 13 plan must equal two percent (2%) plus the prime rate set in the Money Rates Section of the *Wall Street Journal* on the date the petition initiating the Chapter 13 case was filed.

1879, 1882-83, 138 L.Ed.2d 148 (1997). We must decide whether the bankruptcy court erred in its selection of the appropriate post-confirmation interest rate to use in calculating whether Green Tree would receive payments "as of the effective date of the plan" of a value "not less than the allowed amount of such claim."

Although this court has not addressed this question in a Chapter 13 case, it has opined on the choice of cramdown interest rate in the analogous provision in Chapter 11. Applying the requirements of § 1129(b)(2)(A)(i)(II), the bankruptcy court is to make a factual determination of the interest rate appropriate under all the circumstances and to evaluate whether the payments under the plan will provide the creditor with the present value of his allowed secured claim. *See In re Briscoe Enter., Ltd., II,* 994 F.2d 1160, 1169 (5th Cir.1993); *In re T-H New Orleans Ltd. Partnership,* 116 F.3d 790, 800 (5th Cir.1997). This court has declined to "establish a particular formula" for the cramdown interest rate in Chapter 11 cases. *T-H New Orleans,* 116 F.3d at 800. However, we have noted that "[o]ften the contract rate will be an appropriate rate ..." and that "[n]umerous courts have chosen the contract rate if it seemed to be a good estimate as to the appropriate discount rate." *Briscoe Enter.,* 994 F.2d at 1169 (citing *In re Monnier Bros.,* 755 F.2d 1336, 1339 (8th Cir.1985) and *In re Guilford Telecasters, Inc.,* 128 B.R. 622 (Bkrtcy.M.D.N.C.1991)). *See also T-H New Orleans,* 116 F.3d at 801 (affirming lower court's adoption of contract rate as appropriate cramdown interest rate).

Guidance is also available from other circuits' approach to Chapter 13. In *General Motors Acceptance Corp. v. Jones,* 999 F.2d 63, 65 (3d Cir.1993), the Third Circuit decided that the Chapter 13 cramdown interest rate "is that which the secured creditor would charge, at the effective date of the plan, for a loan similar in character, amount and duration to the credit which the creditor will be required to extend under the plan." In reaching this conclusion, the court rejected an approach that would merely compensate the creditor for his estimated "cost of funds" to be extended in the loan. *Id.* at 67. The "cost of funds" analysis fails to take into account that the Chapter 13 plan "effectively coerces a new extension of credit in which the creditor is required to assume not only the cost of capital over the deferral period but also the cost of sustaining the lending relationship over that period." *Id.* Thus, the court adopted a "coerced loan" model, which theorizes that "[i]n effect the law requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan." *Id.* (quoting *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427, 429 (6th Cir.1982)). Since the creditor is forced not only to cover the cost of providing the funds to be extended to the debtor, but also of extending the loan, the court decided that if the creditor received the rate it charged "in the regular course of its business in the region for loans of similar character, amount and duration, that creditor will be placed in approximately the same position it would have occupied had it been able simply to

4

repossess the collateral at the time of the bankruptcy." *Id.* at 68.

The Third Circuit also urged minimization of administrative and litigation costs in Chapter 13 cases, which are "high in volume and low in absolute value." *General Motors Acceptance Corp.,* 999 F.2d at 70. Thus, to "reduce litigation expense," the court adopted an additional rule:

> In the absence of a stipulation regarding the creditor's current rate for a loan of similar character, amount and duration, we believe it would be appropriate for bankruptcy courts to accept a plan utilizing the contract rate if the creditor fails to come forward with persuasive evidence that its current rate is in excess of the contract rate. Conversely, utilizing the same rebuttable presumption approach, if a debtor proposes a plan with a rate less than the contract rate, it would be appropriate, in the absence of stipulation, for a bankruptcy court to require the debtor to come forward with some evidence that the creditor's current rate is less than the contract rate.

*Id.* at 70-71.

We are persuaded by the Third Circuit approach. *Accord United Carolina Bank v. Hall,* 993 F.2d 1126, 1130-31 (4th Cir.1993)(match "rate of return to the secured creditor with that which the creditor would otherwise be able to obtain in its lending market"); *In re Hardzog,* 901 F.2d 858, 860 (10th Cir.1990) (Chapter 12 case; look to market of similar loans in the area); *Memphis Bank and Trust Co., v. Whitman,* 692 F.2d 427, 431 (6th Cir.1982) (same). It is consistent with the approach we have taken in Chapter 11 cases in attempting to find the rate which best calculates the present value of the payments offered under the plan. Essentially, "the creditor is entitled to the rate of interest it could have obtained had it foreclosed and reinvested

5

the proceeds in loans of equivalent duration and risk." *Koopmans v. Farm Credit Services of Mid-America,* 102 F.3d 874, 875 (7th Cir.1996) (interpreting § 1225(a)(5)(B)(ii)).

Critics of the "coerced loan" approach fault it for awarding the lender "profit" as an element of the market rate. *See, e.g., In re Valenti,* 105 F.3d 55, 63-64 (2d Cir.1997); Collier on Bankruptcy ¶ 1325.06[3][b][iii][B] (15th ed. rev.). However, we agree with the Third Circuit that to exclude profit would violate the statutory requirement that the creditor be placed "in the same position it would have been in if it had been allowed to end the lending relationship at the point of the bankruptcy filing by repossessing the collateral." *General Motors Acceptance Corp.,* 999 F.2d at 69. As Judge Easterbrook reasoned, "[a] supplier of capital, no less than a supplier of seeds or combines, is entitled to the market price." *Koopmans,* 102 F.3d at 876.[2]

---

[2]Judge Easterbrook explained why the reference to "profits" can be misleading:

> [I]n competition, a financial intermediary does not make a "profit." True, there may be accounting profits, but there are no economic profits in vigorous competition, one of Adam Smith's principal points in *The Wealth of Nations* (1776).... Normal returns to entrepreneurial and managerial skill may keep the wolf from the door, but they are not economic "profit." What appears on the books as accounting profit is just the opportunity cost of keeping the firm's assets in this business rather than the next-best alternative. Financial intermediation is today highly competitive.... To say that the lender is limited to its "cost of capital" ... is therefore to say that the lender is entitled to the market rate of interest, for that is what its cost of capital is: the price it must pay to its own lenders, plus the costs of making and administering loans, plus reserves for bad debts (that is, the anticipated rate of non-repayment.)

In the Chapter 11 cases this court has acknowledged that it is necessary, through whatever valuation methodology proposed by the parties, to consider the risk associated with a particular loan. *See, e.g., T-H New Orleans,* 116 F.3d at 801. Chapter 13 cases, because of the greater need to reduce litigation expenses associated with an individualized discount rate determination, call for particular guidance in the selection of the appropriate post-confirmation interest rate. The type of expert testimony on valuation that is presented in complex Chapter 11 cases[3] is not practical for the typical Chapter 13 case. Finding the correct rate is still a factual determination which will be reviewed for clear error, but the contract rate, together with the rebuttable presumption approach we add here, provides the best formula for a correct choice. As articulated by the Third Circuit in *General Motors Acceptance Corp.,* this approach balances the competing considerations of maximizing judicial economy and ensuring an accurate reflection of the costs and risks associated with the secured lender's "forced" extension of credit in the Chapter 13 plan.

In this case the court erred in not making a factual determination, based on the presumption described here, as to the appropriate discount rate for the forced extension of credit by Green Tree. While we appreciate the bankruptcy court's effort to

---

102 F.3d at 876.

[3]*See, e.g., T-H New Orleans,* 116 F.3d at 800-01 (describing competing expert testimony and methodologies presented at Chapter 11 confirmation hearing).

promote judicial economy by resorting to the Southern District's local rule, that approach fails to ensure that the risk factors associated with compulsory lending to Chapter 13 debtors are properly considered. Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.

REVERSED AND REMANDED.