In re Michael & Mary RICHARD, Carolyn C. Smith, Antoinette M. Hardy, Sylvia E. Marks, George L. Maple, Jr., Rickey & Emma Moten.

Bankruptcy Nos. 98–12066, 98–11531, 98–12019, 98–12038, 98–12158, 98–91718.

United States Bankruptcy Court, E.D. Texas, Beaumont Division.

Nov. 16, 1999.

Robert Barron, Nederland, Texas, John Durkay, Mehaffy & Weber, Beaumont, Texas, for debtors.

James King, Offerman & Associates, Beaumont, Texas, for creditor, Consumer Portfolio Services.

Steve Turner, McGinnis, Lochridge & Kilgore, Austin, Texas, for creditor, General Motors Acceptance Corporation.

## MEMORANDUM OF DECISION REGARDING CONFIRMATION OF DEBTORS' PROPOSED CHAPTER 13 PLANS

BILL G. PARKER, Bankruptcy Judge.

These matters are before the Court upon consideration of the requests of the Debtors, Michael and Mary Richard, Carolyn C. Smith, Antoinette M. Hardy, Sylvia E. Marks, George L. Maple, Jr., and Rickey and Emma Moten (collectively the "Debtors") for confirmation of their respective Chapter 13 plans in the above-referenced cases and the corresponding objections to confirmation filed in these cases by General Motors Acceptance Corporation or Consumer Portfolio Services (the "creditors"). The creditors objected to confirmation based upon the alleged

failure of the Debtors in each case to propose a plan which would provide a stream of payments equal to the present value of the affected creditor's allowed secured claim as required by § 1325(a)(5)(B)(ii) of the Bankruptcy Code. Because the cases presented identical legal issues, the Court conducted a consolidated confirmation hearing for these cases and took the matter under advisement in order to consider the proper interpretation and application of the Fifth Circuit's decision in *Green Tree Fin. Serv. Corp. v. Smithwick (In re Smithwick)*, 121 F.3d 211 (5th Cir. 1997), *cert. denied*, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998) in determining the appropriate discount rate necessary to assure that an affected creditor receives the present value of its allowed secured claim as required by the Code.

# I. *JURISDICTION.*

The Court has jurisdiction to consider the confirmation of the proposed Chapter 13 plans in these cases pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (L) and (*O*).

# II. *FACTUAL AND PROCEDURAL BACKGROUND*

Aside from the determination of the appropriate discount rate, the facts are not in substantial dispute. The following table sets forth the relevant information regarding the existence of the secured claim sought to be treated in each of the respective cases:

| Debtors | Objecting Creditor | Collateral | Amount of Allowed Secured Claim | Contract Interest Rate |
| --- | --- | --- | --- | --- |
| Michael and Mary Richard | CPS | 1993 Chevrolet 1500 truck | $ 8,115.00 | 19.00% |
| Carolyn C. Smith | GMAC | 1997 Nissan Sentra | $ 9,800.00 | 12.25% |
| Antoinette Hardy | GMAC | 1996 Acura TL | $22,325.00 | 13.40% |
| Sylvia Marks | GMAC | 1995 Chevrolet Camaro | $ 9,565.00 | 10.85% |
| George Maple, Jr. | GMAC | 1993 Acura Legend | $12,340.00 | 18.00% |
| Rickey and Emma Moten | GMAC | 1996 Chevrolet Lumina | $ 9,015.00 | 11.40% |

In each case the allowed amount of the creditor's secured claim has previously been determined. The proposed Chapter 13 plan in each case provides for the full payment of such allowed secured claim with a post-confirmation interest rate of 8%. In each case the affected secured creditor filed an objection to the confirmation of the proposed Chapter 13 plan[1] on the ground that the 8% interest rate provided in the plan did not provide a stream of payments equal to the present value of its allowed secured claim in violation of § 1325(a)(5)(B)(ii).

At the confirmation hearing, the Debtors presented the testimony of Dr. Charles Hawkins, a professor of economics at Lamar University, regarding the proper con-

---

1. Actually, GMAC failed to file a formal objection to the confirmation of the plan in the *Hardy* case. However, the parties jointly identified this case as one to be considered in the consolidated hearing on the interest rate issue and the Court finds that GMAC's objection to confirmation as presented at the consolidated hearing was tried by consent.

struction of the interest rate to be used in a present value calculation. Dr. Hawkins testified that the calculation of an interest rate is based upon two components: (1) the risk-free rate for a loan of similar duration and (2) an additional factor to compensate the lender for the risks involved in the transaction. Based on his calculations [2], Dr. Hawkins concluded that the proper risk-free rate in these cases was 5.89%. While admitting that he had not performed any analysis concerning the specific risks involved in a Chapter 13 case, Dr. Hawkins testified that the 2.11% difference between the risk-free rate and the Debtors' proposed plan rate of 8% more than compensated the creditors for the risks associated with the Chapter 13 process. Dr. Hawkins further admitted that he had given no consideration to the lending practices of the affected creditors in reaching his conclusion that each plan as proposed provided the respective creditor with the present value of its allowed secured claim in each case.

In response to the Debtors' case-in-chief, the creditors simply introduced their contractual agreements with the respective Debtors and asserted that the Debtors had failed to rebut the presumption that each such contract rate constituted the appropriate post-confirmation interest rate necessary to meet the requirements of § 1325(a)(5)(B)(ii).

Following the testimony, the parties presented extended argument regarding the proper interpretation of *Smithwick* which the parties acknowledge addresses the appropriate means in this circuit for determining the proper interest rate for the payment of a secured claim in a Chapter 13 case. The parties agree that *Smithwick* establishes for cases filed within this circuit a rebuttable presumption that the interest rate utilized in the original contract between the parties is the proper rate to use for the purpose of

§ 1325(a)(5)(B)(ii). However, there is a substantial disagreement as to whether *Smithwick* imposes a mandatory evidentiary standard which stands as the exclusive means by which the contract rate presumption may be overcome.

It is the position of the objecting creditors that *Smithwick* clearly imposes a precise procedure in Chapter 13 cases for negating the contract rate presumption and that the Debtors' presentation was wholly inadequate under that standard. According to the creditors, a party in a Chapter 13 case seeking to rebut the contract rate presumption in a Chapter 13 case is required under *Smithwick* to demonstrate that the interest rate actually being received by the affected creditor as of the effective date of the plan, for a loan made in the same geographic region and of similar character, duration, and amount, is different from the contract rate. If this is, in fact, the correct interpretation of *Smithwick*, it is undeniable that the evidence presented by the Debtors at the hearing was insufficient to rebut the contract rate presumption and the Chapter 13 plans as proposed cannot be confirmed.

However, the Debtors insist that the proposed plans containing the 8% interest rate should be confirmed because *Smithwick* cannot be properly read as imposing any mandatory evidentiary standard which they were required to meet in order to overcome the contract rate presumption. Accordingly, they assert that their presentation of evidence based upon Dr. Hawkins' conventional present value calculations fulfilled the requirements of *Smithwick* and was sufficient to rebut the contract rate presumption.

## III. *DISCUSSION*

 As one of the prerequisites to the confirmation of a Chapter 13 plan, § 1325(a)(5)(B)(ii) provides as follows:

**2.** Dr. Hawkins computed the risk-free rate in these cases by taking a weighted average of the return as of June 25, 1999 on the three-

month treasury bill with a weight of one, and the five-year treasury note with a weight of five.

(a) [T]he court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan—

> (B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

That requirement is fulfilled only if a plan provides for a stream of payments over time to the affected secured creditor which will total the present value of the allowed secured claim as based upon the replacement value of the collateral. *See, Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997). Thus, a Chapter 13 plan which seeks to modify the rights of the holder of a secured claim can only be confirmed over such creditor's objection if the plan incorporates a post-confirmation interest rate sufficient to assure that the creditor will, in fact, receive the same economic value over the life of the plan as it would have received if its secured claim had been paid immediately. 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][iii][B] at p. 1325–35 (15th ed. rev., 1999).

Courts have employed a myriad of disparate approaches in an effort to identify the proper methodology to be utilized by bankruptcy courts in determining an appropriate post-confirmation interest rate

under § 1325(a)(5)(B)(ii) and similar statutes in Chapters 11 and 12.[3] Among the various methods is a "formula approach," under which the interest rate is determined by ascertaining the current rate for a "risk-free" investment, usually a treasury security, for a period comparable to that of the proposed plan period, then adding an adjustment for applicable risks. *See, e.g., In re Valenti,* 105 F.3d 55 (2nd Cir.1997) [Chapter 13]; *In re Fowler,* 903 F.2d 694 (9th Cir.1990) [Chapter 12]. Another more prevalent method is the "coerced loan approach," under which a deferred payment of a debt under a plan is likened to a coerced loan which entitles the creditor to a rate that such creditor "would charge, at the effective date of the plan, for a loan similar in character, amount and duration to the credit which the creditor will be required to extend under the plan." *General Motors Acceptance Corp. v. Jones (In re Jones),* 999 F.2d 63, 65 (3rd Cir. 1993) [Chapter 13].[4]

The utility of these various methodologies in the context of a Chapter 13 case were addressed by the Fifth Circuit for the first time in its 1997 *Smithwick* decision.[5] In *Smithwick,* a secured creditor objected to the post-confirmation interest rate applied to its secured claim by the debtor's proposed Chapter 13 plan. It claimed that the proposed rate, which was lower than the interest rate provided in the parties' contract, did not provide it with the value of its allowed secured claim

---

**3.** *See generally,* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY ¶ 5.51 (2nd ed.1994); 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][iii][B] (15th ed. rev., 1997); David G. Epstein, *Don't Go and Do Something Rash About Cram Down Interest Rates,* 49 ALA.L.REV. 435 (1998); as well as recent decisions involving this issue which address the various approaches: *In re Carson,* 227 B.R. 719 (Bankr.S.D.Ind.1998); *In re Oglesby,* 221 B.R. 515 (Bankr.D.Colo.1998); *In re Segura,* 218 B.R. 166 (Bankr.N.D.Okla. 1998).

**4.** *See also* slight variations of this approach adopted by the Fourth Circuit in a Chapter 13 case, *United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir.1993); by the Tenth Circuit in a

Chapter 12 case, *In re Hardzog,* 901 F.2d 858 (10th Cir.1990); and by the Sixth Circuit in a Chapter 13 case, *Memphis Bank & Trust v. Whitman,* 692 F.2d 427 (6th Cir.1982).

**5.** Prior to the Fifth Circuit's issuance of *Smithwick* in 1997, the bankruptcy courts in this district had utilized the formula approach to determine the appropriate interest rate for payment of secured claims, both in a Chapter 13 context, *see, e.g., In re Collins,* 167 B.R. 842 (Bankr.E.D.Tex.1994) (Judge Donald R. Sharp, presiding), as well as in Chapter 11 cases, *see, e.g., In re Westwood Plaza Apartments,* 147 B.R. 692, 701 (Bankr.E.D.Tex. 1992) (Chief Judge Houston Abel, presiding).

408

as of the effective date of the plan. The bankruptcy court overruled the objection and confirmed the plan based on a local court rule which established post-confirmation interest rates in all Chapter 13 cases at 2% plus the WALL STREET JOURNAL prime rate as of the date of the bankruptcy petition. The district court affirmed the decision of the bankruptcy court.

On appeal the Fifth Circuit observed that, although it had not addressed the methodology for selecting an appropriate post-confirmation interest rate in a Chapter 13 case, it had done so in a Chapter 11 context. In referencing its prior opinions in *In re Briscoe Enter. Ltd., II*, 994 F.2d 1160, 1169 (5th Cir.1993) and *In re T-H New Orleans Ltd. Partnership*, 116 F.3d 790, 800 (5th Cir.1997), wherein it had directed bankruptcy courts in Chapter 11 cases "to make a factual determination of the interest rate appropriate under all the circumstances," the Circuit noted that it had not mandated the use of any particular formula in order to make such a factual determination in Chapter 11 cases. *Smithwick*, 121 F.3d at 213. '

That is the basic foundation upon which the Debtors argue that *Smithwick* does not impose a specific rebuttal methodology. According to the Debtors, *Smithwick* simply establishes the contract rate as the origination point for the interest rate determination, but that, thereafter, it simply adopts the same standard for Chapter 13 cases that *Briscoe* and *T-H New Orleans* imposes for Chapter 11 cases—that the interest rate determination is a factual issue for the Court to resolve under the evidence presented, without mandating any particular evidentiary presentation. The Debtors argue, for a number of reasons, that *Smithwick* should not be read as an adoption by the Fifth Circuit of the "coerced loan" theory and its mandated rebuttal methodology for Chapter 13 cases, as articulated in the Third Circuit's *Jones* decision. They state that the utilization of that process contradicts the conventional means by which a present value calculation

is performed in the "real world." They further argue that the adoption of such a process fails to recognize Congress' continued refusal to adopt the contract rate as the statutory standard for compliance with § 1325(a)(5)(B)(ii), and improperly revives the concept of creditor compensation for lost opportunity costs. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd. (In re Timbers of Inwood Forest Assoc., Ltd.)*, 793 F.2d 1380 (5th Cir.1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987); *aff'd* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Thus, the Debtors assert that the presentation of the uncontradicted testimony of Dr. Hawkins, though proffered without any reference to the lending practices of the affected creditors, was sufficient to rebut the contract rate presumption and to support the interest rate proposed by the various plans.

While those are perhaps meritorious arguments as to why a formula approach might be preferable to the coerced loan theory and its mandated rebuttal methodology in determining the appropriate interest rate under § 1325(a)(5)(B)(ii), this Court is bound by what the Fifth Circuit actually said in *Smithwick*. In acknowledgment of the opinion's repeated characterizations of a Chapter 13 plan's treatment of a secured claim as a "forced extension of credit" and as "compulsory lending," as well as its unequivocal defense of the profit element inherent in the theory's underpinnings, courts and commentators have widely recognized that *Smithwick* represents a wholesale adoption of *Jones'* coerced loan theory, including adoption of its precise methodology for rebutting the presumption that the contract rate is the appropriate discount rate under § 1325(a)(5)(B)(ii). *American General Finance, Inc. v. Kleinknecht*, 230 B.R. 207, 210 (M.D.Ga. 1999); *In re Felipe*, 229 B.R. 489, 492 (Bankr.S.D.Fla.1998); *In re Palmer*, 224 B.R. 681, 683 (Bankr.S.D.Ill.1998); *In re Glueck*, 223 B.R. 514, 522 (Bankr. S.D.Ohio 1998); *In re Oglesby*, 221 B.R.

515, 521–22 (Bankr.D.Colo.1998); *In re Segura*, 218 B.R. 166, 172, n. 5 (Bankr. N.D.Okla.1998); David G. Epstein, *Don't Go and Do Something Rash About Cram Down Interest Rates*, 49 ALA.L.REV. 435, 466 (1998); Timothy D. Moratzka, *Post–Confirmation Interest Rates in Chapter 13 Cases*, AM.BANKR.INST.J., June, 1998, at 16.

 Thus, *Smithwick* has not only established a rebuttable presumption that the interest rate utilized in the original contract between the parties is the proper rate to utilize for the purpose of complying with the requirements of § 1325(a)(5)(B)(ii), it has also imposed upon this Court a creditor-specific evidentiary standard for rebutting the contract rate presumption in Chapter 13 cases. Accordingly, in order to impose an interest rate other than the contract rate in a Chapter 13 case, a party must demonstrate, by stipulation or by a preponderance of the evidence, that the proposed interest rate is that which is actually being received by the affected creditor for a loan made in the same geographic region and of similar character, duration, and amount, as of the effective date of the plan. The Fifth Circuit specifically stated that the more flexible standard adopted in *Briscoe* and *T–H New Orleans* for Chapter 11 cases is inapplicable in a Chapter 13 context because

> the greater need to reduce litigation expenses associated with an individualized discount rate determination, *call[s] for particular guidance* in the selection of the appropriate post-confirmation interest rate. The type of expert testimony on valuation that is presented in complex Chapter 11 cases *is not practical* for the typical Chapter 13 case. *Smithwick*, 121 F.3d at 214–15 (emphases added).

Thus, while it is still technically making a factual determination regarding the appropriate interest rate, a court in a Chapter

13 case, unlike a Chapter 11 case, is not permitted to deviate from the contract rate unless there is sufficient evidence which demonstrates that the proposed rate is, as of the effective date of the plan, "an accurate reflection of the costs and risks associated with the secured lender's 'forced' extension of credit in the Chapter 13 plan." *Id.* at 215. It was the failure of the Southern District's local rule to encompass consideration of those creditor-specific costs and risks which, in the Circuit's opinion, mandated a reversal in *Smithwick*. *Id.* ["While we appreciate the bankruptcy court's effort to promote judicial economy by resorting to the Southern District's local rule, that approach fails to ensure that the risk factors associated with compulsory lending to Chapter 13 debtors are properly considered."].

Thus, this Court is compelled to reject the Debtors' strained interpretation of *Smithwick* and to deny confirmation of the proposed plans in these cases. However, the Court must note that the Debtors' serious concerns regarding the impact of *Smithwick* are not wholly illegitimate. Given that the most undeniable element in this entire equation is that most Chapter 13 debtors will not possess the resources necessary to finance a full-scale litigation of the presumption issue, it seems apparent that the imposition of the contract rate will simply be a foregone conclusion in the vast majority of Chapter 13 cases. Thus, the practical impact of *Smithwick* is that the contract rate will simply be substituted for whatever interest rate had been generally established in Chapter 13 cases in a particular court, whether by local rule or through a conventional factual determination during a particular period·of time. While that result undoubtedly reduces litigation costs, such a *de facto* resolution creates concern because it may not actually reflect the true economic realities of that particular debtor-creditor relationship[6] and will likely be funded at the

---

6. This could particularly be true for lower-income debtors who have previously pur-

chased a used vehicle at an exorbitant (yet legal) interest rate, and who, as a practical

expense of other creditors of the estate. Additionally, one must acknowledge that the coerced loan theory, as articulated by *Jones* and adopted by *Smithwick,* was a pre-*Rash* case which was premised upon the assumption that the Chapter 13 process forced a secured creditor to forego the proceeds of *liquidated* collateral and which created a methodology to insure that a secured creditor would realize that same value through the Chapter 13 plan. However, now that *Rash* requires that a Chapter 13 debtor pay the present value of a sum representing the replacement value of the collateral, as opposed to a lower liquidation value, the strict imposition of the *Jones* methodology may be unfairly advantageous to the creditor. Even in the unlikely event that the propriety of a contract rate is challenged, *Smithwick* significantly limits a court's ability to evaluate the appropriateness of the contract rate in relation to other significant market factors. In light of these concerns and the facts that Congress has never consented to demands for a statutory recognition of the contract rate as the appropriate rate under § 1325(a)(5)(B)(ii),[7] the dramatic shift in favor of secured creditors which *Smithwick* imposes may not only be unwarranted, but contrary to the overall rehabilitative intent of Chapter 13. However, while there may be serious concerns regarding the propriety of the results which *Smithwick* will undoubtedly engender by default, this Court is nonetheless bound to implement the mandate imposed by *Smithwick* until such time as it may be revisited.

matter, will now be compelled under *Smithwick* to maintain that rate in their proposed plan, even though, absent financial constraints, it could perhaps be shown that the risks justifying the imposition of that rate at the inception of the loan are, in fact, reduced by the benefits gained by extending credit through the Chapter 13 process, including a decreased risk of default through Court-ordered income deduction for plan payments and increased financial viability as a result of the reorganization.

## IV. *CONCLUSION*

Because the Debtors in these respective cases failed to present any evidence that the interest rate currently being received by the affected creditor for a loan of similar character, duration, and amount made in the Beaumont area is 8% rather than the contract rate, the Debtors' evidentiary presentation was insufficient to rebut the contract rate presumption and the Court concludes that the Chapter 13 plans as proposed in each such respective case cannot be confirmed since they do not comply with the requirements of § 1325(a)(5)(B)(ii).

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[8] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed.R.Bankr.P. 7052 and 9014. A separate order will be entered in each case which is consistent with this opinion.

---

7. *See Green Tree Fin. Serv. Corp. v. Smithwick,* 202 B.R. 420, 422 (S.D.Tex.1996) and *Key Bank of N.Y. v. Harko (In re Harko),* 211 B.R. 116, 120 n. 7 (2d Cir. BAP 1997).

8. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.