REVISED MARCH 27, 2008

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 07-40265
No. 07-40266

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

March 12, 2008

Charles R. Fulbruge III
Clerk

DRIVE FINANCIAL SERVICES, L.P.

Appellant

v.

BOBBY J. JORDAN and FREDA L. JORDAN

Appellees

Appeals from the United States Bankruptcy Court
for the Eastern District of Texas

Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Drive Financial Services, L.P. ("Drive Financial") directly appeals the bankruptcy court's October 18 and October 23, 2006 orders amending and confirming the Chapter 13 bankruptcy plan submitted by debtors-appellees Bobby and Freda Jordan (the "Jordans"), which provided for interest on Drive Financial's secured claim on the Jordans' pickup truck at a "prime-plus" interest rate. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS BELOW

The facts of this case are not in dispute. On July 20, 2003, the Jordans purchased a 2003 Chevrolet Silverado pickup truck (the "Truck"). In order to finance

the Truck, the Jordans entered into a Texas Vehicle Retail Installment Contract with Drive Financial. The contract provided Drive Financial with a properly perfected, first-priority, purchase-money security interest in the Truck. The contract provided for an interest rate of 17.95%.

On or about December 22, 2005, the Jordans filed for protection under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of Texas.[1] When the Jordans drafted their Chapter 13 plan, they elected to retain possession of the Truck and to pay Drive Financial's secured claim in installments with an interest rate of six percent. On January 10, 2006, Drive Financial filed an objection to the Jordans' Chapter 13 plan on the grounds that the proper interest rate to apply to its secured claim was the contract rate of 17.95%. The bankruptcy court held a hearing on Drive Financial's objection on March 8, 2006. At this hearing the bankruptcy court ordered additional briefing on the applicability of the decision in Till v. SCS Credit Corp., 124 S. Ct. 1951 (2004), to the determination of the interest rate the Jordans were to pay on Drive Financial's secured claim.

In its October 18, 2006 "Order Regarding Confirmation of Debtor's Chapter 13 Plan," the bankruptcy court held that the Supreme Court decision in Till was binding precedent, so it calculated the Jordans' interest rate using the "prime-plus" approach adopted by the plurality of the Court in Till.[2] According to the parties' stipulation,[3] the bankruptcy court modified the interest rate payable on Drive Financial's claim in the Jordans' Chapter 13 plan to 7.5%. On October 23, 2006, the bankruptcy court confirmed the Jordans' Chapter 13 plan as modified by its October 18 order.

---

[1] Since the Jordans filed for bankruptcy after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), October 17, 2005, it is undisputed that amendments made to the Bankruptcy Code by BAPCPA apply to the Jordans' bankruptcy. P.L. 109-8, § 1501(a), 119 Stat. 215 (2005).

[2] The prime-plus rate is arrived at by taking the national prime lending rate, a readily reported rate at which a bank would make a loan to a very low-risk borrower, and augmenting it to account for a particular borrower's risk of default.

[3] Prior to the bankruptcy court's order, the parties stipulated that if Till were applicable, the appropriate prime-plus rate would be 7.5%, but if Till were not applicable, the proper rate under Fifth Circuit precedent would be the contract rate of 17.95%.

On December 15, 2006, Drive Financial timely filed a "Petition for Certification of Circumstances for Direct Appeal to the Court of Appeals" with respect to each bankruptcy court order in the United States District Court for the Eastern District of Texas. The district court entered orders granting the petitions on January 18, 2007. Drive Financial then petitioned this court to hear this direct appeal under 28 U.S.C. § 158(d)(2). Those petitions were granted by this court on March 20, 2007.[4]

## JURISDICTION

Appellants have directly appealed to this court the October 18 and October 23 orders of the bankruptcy court pursuant to 28 U.S.C. § 158(d)(2). This statute was enacted as part of BAPCPA in order to provide for direct review of bankruptcy court judgments, orders, or decrees by the applicable court of appeals in cases where the bankruptcy court or the district court certify that there is no controlling Supreme Court or circuit court decision, the case involves a matter of public importance, there are conflicting precedents, or an immediate appeal may materially advance the progress of the bankruptcy proceeding. 28 U.S.C. § 158(d)(2). If this certification is made, the applicable court of appeals has jurisdiction if it authorizes the direct appeal of the bankruptcy court's judgment, order, or decree. Id.

In this case, Judge Schneider of the United States District Court for the Eastern District of Texas certified that this case met the criteria for direct appeal set forth in section 158(d)(2) on January 18, 2007. A motions panel of this court granted Drive Financial's petitions for direct appeal on March 20, 2007. Since all of the requirements of section 158(d)(2) are met in this case, this court has jurisdiction over this direct appeal from the bankruptcy court.

## DISCUSSION

The central question in this case is what is the proper rate of interest to be paid on a secured claim that is paid in installments pursuant to a Chapter 13 plan. The

---

[4] On appeal, this case received two distinct cause numbers in this court because Drive Financial filed separate appeals for each of the bankruptcy court's orders (the October 18, 2006 order and the October 23, 2006 order) and each appeal was certified separately by the district court and authorized separately by this court. These cases were consolidated before oral argument.

Bankruptcy Code states that a Chapter 13 plan should only be confirmed if, for each allowed secured claim: 1) the holder of that claim accepts the plan; 2) the holder of the claim retains the lien securing the claim and the Chapter 13 plan provides that the value, as of the date of the plan, of property (generally cash) to be distributed under the plan to the holder of the claim is not less than the allowed amount of such claim;[5] or 3) the debtor surrenders the property securing the claim. See 11 U.S.C. § 1325(a)(5). In this case, Drive Financial did not accept the plan and the Jordans are not surrendering the Truck, so in order for the plan to be confirmed, the Jordans' plan must provide for distribution to Drive Financial of property that has no less value than the amount of Drive Financial's secured claim.[6] The Bankruptcy Code's reference to paying value is generally understood to incorporate the principle of the time value of money, so payments made pursuant to a Chapter 13 plan must incorporate an interest rate to account for the fact that a dollar paid today is worth more than a dollar paid tomorrow. Till, 124 S. Ct. at 1966 (Thomas, J., concurring in judgment). The Bankruptcy Code, however, provides little guidance as to how the interest rate should be set, so we look to past precedent to determine whether the bankruptcy court applied the correct interest rate to Drive Financial's secured claim.

## I. Standard of Review

When directly reviewing an order of the bankruptcy court, we apply the same standard of review that would have been used by the district court. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. FED. R. BANKR. P. 8013.

---

[5] This second option also requires that if the property distributed is in the form of periodic payments, the payments must be made in equal monthly amounts and that if the secured claim is for personal property, the amount of such payments shall not be less than an amount sufficient to provide the claim-holder with adequate protection. 11 U.S.C. § 1325(a)(5)(B)(iii). There is no allegation that the Jordans' Chapter 13 plan did not provide for equal periodic payments, and Drive Financial does not assert that it should receive adequate protection on its secured claim.

[6] This option is referred to as the "cram down option" because it allows the debtor to confirm a Chapter 13 plan that modifies the terms of a creditor's claim over that creditor's objection as long as the debtor pays value on the claim. 11 U.S.C. 1325(a)(5)(B); Assocs. Commercial Corp. v. Rash, 117 S. Ct. 1879, 1882-83 (1997).

## II. Does BAPCPA's Hanging Paragraph Supercede Till?

The Supreme Court recently addressed what rate of interest needed to be paid to an objecting secured creditor whose claim was paid in installments under a Chapter 13 plan. See Till, 124 S. Ct. at 1962 (Stevens, J., plurality) (holding that the prime-plus approach should be used to determine the proper interest rate). After Till, Congress enacted BAPCPA, which made significant changes to the Bankruptcy Code. So before examining Till, we must determine whether it has been superceded by any provisions of BAPCPA.

BAPCPA added an unnumbered paragraph following section 1325(a)(9). This paragraph is commonly referred to as the "hanging paragraph." The hanging paragraph provides that section 506 of the Bankruptcy Code, 11 U.S.C. § 506, shall not apply if:

> "the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor . . . ."

11 U.S.C. § 1325(a). Section 506 permits a debtor to bifurcate a secured creditor's claim into a secured and an unsecured portion if the value of the collateral is less than the amount of the claim. The portion of the claim that is greater than the value of the collateral is unsecured and the portion equal to the value is secured. This bifurcation process is known as "stripping down" a secured creditor's lien, and it is commonly used by debtors in conjunction with the cram down option to retain depreciated collateral on significantly better terms.[7] The hanging paragraph prevents this bifurcation for secured claims that meet its criteria, so the entire claim remains secured, regardless of the value of the collateral.[8]

---

[7] This occurs because the stripped down portion of the loan is paid at cents on the dollar like most unsecured claims in bankruptcy and the cram down option allows a debtor to obtain a more favorable interest rate on the remaining secured portion of the loan.

[8] The Jordans do not dispute that the hanging paragraph applies to Drive Financial's security interest in the Truck or that Drive Financial's entire claim is secured.

Drive Financial argues that since the hanging paragraph makes section 506 inapplicable to its claim, the Supreme Court's opinion in Till is distinguishable because it dealt with a lien-stripped claim[9] and it was decided before the hanging paragraph was added to the Bankruptcy Code.[10] If Till is distinguishable, Drive Financial contends that this court should follow its prior precedent and mandate that the Jordans' Chapter 13 plan use the contract rate to pay off its claim. Green Tree Fin. Servicing Corp. v. Smithwick, 121 F.3d 211, 214-15 (5th Cir. 1997) (adopting the "presumptive contract rate approach"[11] to determine the interest rate to be paid on a secured Chapter 13 claim).

This argument is unpersuasive because Till did not rely upon the fact that the creditor's claim had been bifurcated using section 506. The purpose of bifurcation is to determine how much of a creditor's claim is secured; then section 1325(a)(5)(B) determines what interest rate should be applied to that secured claim. In Till, the Supreme Court decided what interest rate was required to be paid on an objecting creditor's secured claim to ensure that the creditor receives value for its crammed down claim as required by section 1325(a)(5)(B). That is the same question presented in this case. The only difference is that all of Drive Financial's claim is secured, as opposed to only a portion of the creditor's claim being secured in Till, because the hanging paragraph prohibited Drive Financial's claim from being bifurcated. Drive Financial

---

[9] Drive Financial uses the section 1325(a)(5)(B) cram down option interchangeably with section 506 lien stripping in its brief. This muddling of the two provisions is problematic because they are two distinct provisions of the Bankruptcy Code and they operate independently of each other, although debtors frequently employ both of them when restructuring their claims under Chapter 13. Furthermore, the text of the hanging paragraph only prohibits the application of section 506 lien stripping for certain Chapter 13 secured claims; it makes no mention of the section 1325(a)(5)(B) cram down provision.

[10] Drive Financial does not argue that BAPCPA prohibits the bankruptcy court from modifying the contract rate when it sets a rate for repayment of a claim covered by the hanging paragraph in a Chapter 13 plan.

[11] In this approach, the debtor bears the burden of rebutting the presumption that the contract rate was the correct rate by presenting evidence that his risk of default was lower now than it had been when he initially entered into the loan.

has provided no reason for why this distinction would affect Till's holding regarding the proper rate of interest to be paid upon a secured claim.

BAPCPA did not amend the definition of value under section 1325(a)(5)(B), nor did it prohibit bankruptcy courts from altering the contractual terms for secured claims.[12] Since these were the issues decided by Till, we hold that Congress did not supercede Till when it passed BAPCPA.

## III. Is Till Binding Precedent?

Having held that BAPCPA has not superceded Till, we must now examine whether Till mandates that the prime-plus approach be used to determine the interest rate to be paid on Drive Financial's secured claim. The facts of Till are indistinguishable from the facts of this case, but Till was a plurality decision in which no opinion was joined by five justices. Consequently, we must determine which of these opinions, if any, controls.

The Supreme Court has stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" Marks v. United States, 97 S. Ct. 990, 993 (1977) (quoting Gregg v. Georgia, 96 S. Ct. 2909, 2923 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

In Till, the debtors filed for relief under Chapter 13 of the Bankruptcy Code and proposed a plan in which they retained possession of their truck and repaid the creditor's secured claim in installments. Till, 124 S. Ct. at 1956 (Stevens, J., plurality). The original contract rate of interest on the truck loan was twenty-one percent, but the Tills' plan proposed paying interest on the creditor's secured claim at a prime-plus rate of 9.5%. Id. at 1956-57. The creditor holding the secured claim on the Tills' truck objected, claiming that it was entitled to have interest paid on its claim at the contract

---

[12] If Congress had intended to exclude the secured claims covered by the hanging paragraph from being modified in bankruptcy it could have done so explicitly as it has done with home mortgages. See 11 U.S.C. § 1322(b)(2) (stating that a Chapter 13 plan may modify the rights of secured claim holders, except for those secured by a mortgage of the debtor's principle residence).

rate. Id. at 1957. The bankruptcy court overruled the creditor's objection and approved the Tills' use of the prime-plus rate. Id. The district court overturned the bankruptcy court and held that Seventh Circuit precedent required that the "coerced loan" approach[13] be used to determine the appropriate interest rate. Id. The Seventh Circuit approved a slightly modified version of the district court's approach, but it noted that the contract rate was presumptively the rate to be used. Id. at 1957-58.

A plurality of four justices, joined by Justice Thomas who concurred in judgment, reversed the Seventh Circuit and held that the prime-plus rate was the appropriate risk-adjusted interest rate to use for installment payments to creditors holding a crammed-down secured claim in a Chapter 13 plan. Id. at 1962. In reaching this decision, the plurality stated that, in order to receive value, creditors should receive an interest rate higher than the prime rate to reflect the risk associated with lending to borrowers who had filed for bankruptcy. Id. at 1961-62. The plurality explicitly rejected the presumptive contract rate approach because it reasoned that that approach would reward inefficient lenders and had the potential to treat similarly situated debtors differently. Id. at 1960. Ultimately, the plurality held that the Seventh Circuit should be reversed and remanded the case to the bankruptcy court for further proceedings to determine the proper prime-plus interest rate. In his concurrence, Justice Thomas reasoned that it would be sufficient to pay secured creditors a risk-free interest rate, here the prime rate, because the statutory language of the Bankruptcy Code did not require secured creditors to receive a risk premium in order to receive value under section 1325(a)(5)(B). Id. at 1966-67 (Thomas, J., concurring in judgment). He concurred in judgment because the plurality's prime-plus approach, namely the debtor's proposed 9.5% rate, was greater than the risk free or prime rate, and hence "will sufficiently compensate respondent [creditor] for the fact that instead of receiving . . . [the principal] today, it will receive . . . [the principal] plus 9.5% interest over a period of up to 36 months." Id. at 1968. The dissent would have

---

[13] Under this approach, the rate is set by determining what interest rate "the creditor could have obtained if it had foreclosed on the loan, sold the collateral, and reinvested the proceeds in loans of equivalent duration and risk." Till, 124 S. Ct. at 1957 (Stevens, J., plurality).

affirmed the Seventh Circuit's presumptive contract rate approach because it determined that the contract rate more closely approximated the true risk of default, whereas the prime-plus approach would "systematically undercompensate secured creditors." Id. at 1968, 1970 (Scalia, J., dissenting).

Drive Financial argues that this court is not bound by either the plurality or the concurrence because there is no common denominator on which the five justices agreed, so there is no narrowest grounds under the standard established in Marks. It supports this argument by pointing out that while the plurality states that creditors are entitled to a risk premium above the prime rate, Justice Thomas's concurrence reasons that a risk premium is not required by the Bankruptcy Code.[14] Drive financial believes that this difference in approach makes the two opinions irreconcilable and, therefore, not binding in future cases.[15]

Drive Financial's reliance on Marks is misplaced in this case because we are presented with essentially the same facts that the Supreme Court was presented with in Till.[16] The purpose of Marks' narrowest grounds test is to allow a lower court to derive a rationale from multiple opinions when none of them are joined by a majority of the justices so that the lower court can apply that rationale in future cases with different facts to ensure outcomes that are faithful to past precedent. Deriving a

---

[14] It is worth noting that while Justice Thomas does not state that the Bankruptcy Code requires a risk premium to be paid, he does not state that it prohibits payment of such a premium. In Till the debtor was always willing to pay the prime plus rate of 9.5%; here the Jordans have not questioned the bankruptcy court's orders fixing the rate at the prime plus rate of 7.5%.

[15] We are aware of no cases where a court presented with similar facts has held that Till is not binding precedent. Drive Financial cites one bankruptcy court case that held that Till is not binding. In re Cook, 322 B.R. 336 (Bankr. N.D. Ohio 2005). That decision is not binding on this court and in any event may be distinguishable because it dealt with the rate owed to unsecured creditors under section 1325(a)(4), not secured creditors under section 1325(a)(5)(B).

[16] Both the Jordans and the Tills filed for relief under Chapter 13, and both sought to use the cram down option to approve a Chapter 13 plan over their secured creditors' objections. In both cases the creditors claimed that they should have been paid the contract rate of interest. Both bankruptcy courts held that the debtors should pay a prime-plus rate of interest on their respective secured claims, the prime-plus rate was considerably lower than the contract rate in each case, and the debtors made no appellate challenge to the prime plus rate.

holding is unnecessary, however, when a future case presents the same facts as a past case decided by a higher court because stare decisis requires that we decide those cases in a similar manner. See United States v. Eckford, 910 F.2d 216, 220 (5th Cir. 1990) (holding that even when the Supreme Court issues an opinion in which there is no common rational, the holding of that case is still binding with regard to future cases presenting the same factual scenario). This case presents such a situation. Since we are presented with facts indistinguishable from Till, we need not attempt to divine a narrowest grounds under Marks. We are bound by stare decisis to apply the holding of Till by rejecting the creditor's challenge to the bankruptcy court's use of the prime-plus interest rate.

This result is also supported by an analysis of what the outcome would be if this court were to hold that Till is not binding precedent because there was no narrowest ground under the Marks test. If Till were not binding, we would remand this case to the bankruptcy court with instructions that it recalculate the interest rate on Drive Financial's secured claim using the presumptive contract rate approach, which was the approach previously adopted by this court. See Smithwick, 121 F.3d at 214-15 (holding that the presumptive contract rate approach should be used to determine interest rates on Chapter 13 plan installment payments on secured claims). [17] Such a holding would be essentially identical to the holding of the Seventh Circuit in Till, which was reversed by five currently active justices on the Supreme Court. Such a result would be untenable at best.[18]

---

[17] See also United States v. Holy Land Found. for Relief & Dev., 445 F.3d 771, 789-90 (5th Cir. 2006) (holding that one panel may not overrule a prior decision of another panel absent an intervening precedent by this court sitting en banc or the Supreme Court).

[18] Drive Financial argues that this court would not have to direct the bankruptcy court to apply the presumptive contract rate approach in this case because the parties have stipulated that 17.5% is the appropriate rate if Till were held to be inapplicable. Drive Financial, however, has offered no evidence that this rate was chosen for any reason other than that it was the original contract rate, and at oral argument, Drive Financial argued that absent the stipulation, Smithwick would control the determination of the applicable interest rate if Till were held not to be binding precedent. Drive Financial admits that the only matter in the present record which would support or justify the 17.5% rate is the fact that it is the contract rate.

Furthermore, while the plurality opinion and Justice Thomas's concurrence offered different reasons for rejecting the Seventh Circuit's application of the presumptive contract rate approach, they both rejected the presumptive contract rate approach as being too generous to creditors. Therefore, if we were to apply the Marks test, the narrowest grounds would be that the coerced loan or presumptive contract rate approach cannot be used if they would yield an interest rate higher than the prime-plus approach.

## CONCLUSION

For the foregoing reasons, we hold that the Till plurality's adoption of the prime-plus interest rate approach is binding precedent in cases presenting an essentially indistinguishable factual scenario. To this extent, Till is an intervening precedent from the Supreme Court that overrules this circuit's prior precedent of Smithwick. United States v. Holy Land Found. for Relief and Dev., 445 F.3d 771, 789-90 (5th Cir. 2006). Thus, the bankruptcy court did not err in rejecting Drive Financial's objections to application of the prime-plus rate to Drive Financial's secured claim in the Jordans' Chapter 13 plan.

AFFIRMED.