**UNITED STATES of America, Plaintiff, Appellant,**

v.

**F. Lee BAILEY, et al., Defendants, Appellees.**

**No. 82–1400.**

United States Court of Appeals, First Circuit.

Argued April 6, 1983.

Decided May 23, 1983.

Kenneth L. Greene, Tax Div., Dept. of Justice, Washington, D.C., with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Daniel F. Ross, Richard W. Perkins, Attys., Tax Div., Dept. of Justice, Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for plaintiff, appellant.

Kenneth J. Fishman, Boston, Mass., for F. Lee Bailey.

Before COFFIN and BOWNES, Circuit Judges, and TAURO,* District Judge.

COFFIN, Circuit Judge.

The United States government (government) appeals from a judgment by the district court holding defendants liable, under 26 U.S.C. § 6332, for the value of certain stock certificates upon which the government imposed a tax levy and which defendants refused to release. The issue before us is whether the district court erred in determining that, despite the fact that on September 28, 1970, stock in Transogram Company, Inc. traded for $8 per share on the American Stock Exchange, the value of 10,000 shares of the stock on that date was only $1, because of circumstances set forth below. Since the court's finding was not clearly erroneous and since the court committed no error of law, we affirm.

Thomas and Evelyn Shaheen retained defendants F. Lee Bailey and Colin W. Gillis to represent them in certain civil and criminal proceedings arising out of the Shaheens' unpaid federal income tax liabilities for the

* Of the District of Massachusetts, sitting by designation.

1966, 1967 and 1968 taxable years. To secure payment of their legal fees, the Shaheens created a trust for the benefit of the defendants and transferred certain items of real and personal property to the defendants as trustees. Included in the property transferred were 10,000 shares of Transogram stock. The certificates were in the name of Columbia Financial Corporation (Columbia) and on the certificates was the notation "SUBJECT TO INVESTMENT LETTER". Also transferred to defendants were documents executed by three directors of Columbia ratifying the transfer of the stock to the trust.

On September 14, 1970, the government made jeopardy assessments against the Shaheens for the taxable years 1966, 1967 and 1968. On September 28, 1970, the government issued Notices of Levy to defendants informing them that the assessments had been made and that they were immediately to surrender to the government all property in their possession belonging to the Shaheens. Defendants did not comply. On July 16, 1971, the government filed a complaint in the United States District Court for the District of Massachusetts alleging that, pursuant to Section 6332 of the Internal Revenue Act of 1954, 26 U.S.C. § 6332, defendants were jointly and severally liable for a sum equal to the value as of the date of the levy of the assets of the Shaheens in their possession.

A trial was held on April 29, 1980. The court determined that the government had perfected its levy and that it was entitled to all the right title and interest of the Shaheens in the assets held by defendants as trustees. The court held, further, that in lieu of the property itself, which had become worthless since the date of the levy, the government was entitled to recover from defendants the value of that property as of September 28, 1970.

The only property concerning which the government introduced evidence of value was the Transogram stock, which, by the time of the trial, had become worthless. Based on the government's evidence that 900 shares of Transogram stock were traded on the American Stock Exchange on September 28, 1970, and that the closing price was $8 per share, the court concluded that the stock had some value. The court recognized, however, that several other factors bore on the value of the stock. First, the sale of 900 shares of the stock on September 28, 1970, brought about a price change of 3/8 of a point, thus suggesting that the market in Transogram shares was "thin" and would not absorb the 10,000 shares. Second, the certificates bore the legend "SUBJECT TO INVESTMENT LETTER", and it appeared that defendants lacked sufficient information regarding the restriction to enable them to transfer the shares freely on the open market. Finally, it was unclear whether the Shaheens were authorized to transfer the stock to defendants in the first place, given that the shares were in the name of Columbia and that there was no evidence that the directors who authorized the transfer constituted a majority of the board of directors. Noting those factors and the opinion testimony of defendant Gillis that the stock was worthless at the time of the levy, the court assigned the value of $1 for the 10,000 shares. From that determination, the government appeals.

The government admits that the fair market value of shares of stock is generally considered a question of fact that may not be disturbed unless it is clearly erroneous. See Arc Realty Co. v. Commissioner, 295 F.2d 98, 103 (8th Cir.1961); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). It argues, however, that because the court placed on the government too heavy a burden of proof as to value, it did not require sufficient evidence of defendants that the stock was valueless.

In support of its argument that the district court should have placed a greater burden on defendants to rebut its evidence of value, the government points to several factors. First, it urges that section 6332 is a coercive statute that seeks to foster the swift tender of property upon which a levy has been made. See Flores v. United States, 551 F.2d 1169, 1174 (9th Cir.1977); United States v. Montchanin Mills, Inc., 512

F.Supp. 1192, 1195 (D.Del.1981). The purpose of the statute requires that the risk of loss due to property becoming worthless be on the defendants who refused to give up the property when the Notice of Levy was issued. That purpose would be undermined by a rule that places too heavy a burden of proof as to value on the government. Second, the government insists that evidence of the stock's actual value is more readily available to the holders of the stock than to the government. Thus, it is fair to place the burden on them to come forward with the evidence. Finally, the government points out that a number of courts have adopted a rule that absent evidence to the contrary, the value of stock is presumed to be equivalent to the value indicated by stock exchange quotations. *See* 10 J. Mertens, *Law of Federal Income Taxation (Rev.)*, Sec. 59.14 and cases cited therein.

■■■■ We acknowledge the reasonableness of a presumption that the value of stock is equal to the value indicated by the stock exchange quotations. Absent such a presumption, the government would rarely be able to establish the value of stock that a party wrongfully withheld from it. Even assuming that the government is entitled to such a presumption, however, we do not interpret the presumption as shifting to the defendants the burden of proving that the stock had no value. The presumption satisfies the government's initial burden of going forward with evidence of value. Absent rebuttal evidence, the government is entitled to prevail based on the value established by the stock exchange quotations. The burden imposed on the defendants by the presumption, however, is not to prove that the stock was valueless or that it had a particular value lower than that urged by the government, but only to come forward

with enough evidence to support a finding that the stock exchange quotations are not a reliable indicator of the actual value of the stock on the day in question. As one court explained a similar presumption, in favor of the validity of the deficiency determinations of the Commissioner of Internal Revenue, the presumption is "a procedural device which requires the taxpayer to come forward with enough evidence to support a finding contrary to the Commissioner's determination." *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir.1975). The job of assessing the sufficiency of the evidence produced by defendants to rebut the presumption remains committed to the sound discretion of the trial court and the ultimate burden of persuasion on the issue of value remains on the government.

Admittedly, a different rule—one that would shift to defendants the burden of persuasion on the issue of value—would further enhance the coercive effect of the statute. Such a rule, however, might also result in injustice to defendants who do not, in fact, have any greater access to proof of the actual value of the property in question than does the government.[1] In the absence of specific Congressional directive, we are reluctant to abandon the general rule that in tax, as in other litigation, plaintiffs have the burden of persuasion. *See Rockwell v. Commissioner, supra*, 512 F.2d at 887. *See also United States v. Massachusetts Mutual Life Ins. Co.*, 38 F.Supp. 333 (D.Mass.1941), *aff'd*, 127 F.2d 880 (1st Cir.1942) (under predecessor statute to section 6332, the government has the burden of proving the value of property it alleged was not surrendered).[2]

■■■ Viewing the evidence in light of these principles, we cannot say that the court's determination was clearly erroneous.

---

1. In this case, the court found that defendants did not have information available to them that would have permitted them to transfer the shares freely on the open market. The court thus apparently credited the testimony of defendants that they had been unable to obtain information that would enable them to dispose of the stock.

2. The defense of no value is distinguishable from the defense that the defendant did not

hold any property of the taxpayer at the time of the levy. The latter is one of two specifically recognized affirmative defenses to a claim under section 6332. *See United States v. Montchanin Mills, Inc., supra*, 512 F.Supp. at 1194. Defendants can be presumed to have access to the necessary information to establish this defense and courts have imposed on defendants the burden of doing so. *Id.* at 1195.

In addition to the stock certificates themselves, which raised questions about the stock's transferability, the district court had before it the testimony of defendant Gillis, a professor of law and an attorney admitted to practice in the Commonwealth of Massachusetts, and the deposition testimony of defendant Bailey. Both defendants testified that they had abandoned efforts to dispose of the stock because defendant Gillis had determined it to be worthless.

It would be helpful to know exactly what defendant Gillis testified led him to the conclusion that the stock was worthless. We are handicapped, however, by the fact that a significant portion of the transcription of defendant Gillis' testimony has been lost. Pursuant to Fed.R.App.P. 10(c), the government has filed and the district court has approved a supplemental statement of the evidence, briefly summarizing the lost testimony. The summary recites that "The substance of Mr. Gillis' testimony concerning the value of the Transogram shares was that he and Mr. Bailey (the other defendant) had believed the entire bundle of assets in the trust to be worthless, and that they had neither ascribed any particular value to the Transogram shares, nor made any effort to determine the value of those shares as of the date of the levies." In their brief, defendants' description of the testimony is that because the stock was subject to an investment letter, defendant Gillis believed that the stock could not be traded and had no market value.

Whatever the specifics of the testimony, the district court relied on it in support of its conclusion that the combined factors of evidence of a "thin" market in Transogram shares, an investment restriction on the certificates and the fact that the stock was in Columbia's name rendered the stock exchange quotations insufficient evidence of value to entitle the government to prevail. Particularly in light of the gaps in the evidence before us, we are unwilling to say that the court was not entitled to credit the testimony of defendant Gillis that in his opinion the stock was worthless on the date of the levy. We are also unwilling to say that the combined factors of the restrictions noted by the district court and the testimo-

ny of defendants was insufficient evidence for the court to conclude that the stock exchange quotations were not probative evidence of actual value of the stock on the date of the levy.

As the district court noted, the government offered no other evidence of value. Since the probative value of the stock exchange quotations was cast into serious doubt by the other evidence before the district court, the government failed to meet its burden of establishing that the value of the stock was more than $1. The judgment of the district court, granting the government recovery against the defendants of $1, plus interest from September 28, 1970 and costs, must be and is therefore

*Affirmed.*