**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-11170

OXFORD CAPITAL CORPORATION,

Plaintiff-Appellant,

VERSUS

UNITED STATES OF AMERICA; ET AL,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

May 2, 2000

Before JONES and DENNIS, Circuit Judges, and PRADO,[*] District
Judge:

PER CURIAM:

This is an appeal from the decision of a magistrate judge that
a levy imposed by the Internal Revenue Service ("IRS") on bank
accounts of Oxford Capital Corporation ("Oxford") to satisfy tax
liabilities of one of its subsidiaries was not a wrongful levy
under 26 U.S.C. § 7426. Oxford filed this appeal, contending that

---

[*]District Judge of the Western District of Texas, sitting by
designation.

the magistrate judge erred both in its application of the applicable standard and in its factual findings. For the reasons discussed, we vacate the decision of the magistrate judge and remand for further proceedings consistent with this opinion.

I.

Oxford is a publicly-traded corporation incorporated in Nevada, which operates as a holding company for multiple subsidiaries. RX was incorporated in the state of Texas as an employee leasing company in 1995 by Jerry Stovall and Rick Tarrell. Due in part to substantial unauthorized withdrawals by an employee, RX suffered severe financial difficulties and fell into arrears in its payment of employee payroll taxes. Due to these financial difficulties, Stovall and Tarrell sold RX to Oxford in 1996, at which time RX became a wholly-owned subsidiary of Oxford. RX continued to fall into arrears with respect to its payment of payroll taxes, and by November 1997 RX owed over three million dollars in back payroll taxes to the government for the third and fourth quarter of 1996 and the first quarter of 1997.

In its attempt to collect the unpaid payroll taxes, the Internal Revenue Service ("IRS") issued notices of levy on RX and on clients of RX that owed accounts payable to RX in November 1997. Soon afterwards, Oxford directed clients of RX to remit payments owed to RX directly into a bank account in the name of Oxford rather than to RX. Fearing that assets of RX were being diverted,

the IRS issued a notice of levy against three bank accounts of Oxford in satisfaction of RX's tax liability -- contending that Oxford was a nominee of RX.

Oxford brought this suit in the Northern District of Texas contending that the levies against its bank accounts constituted "wrongful levies" under 26 U.S.C. § 7426. The parties consented to the case being heard before a magistrate judge pursuant to 28 U.S.C. § 636(c). Before the magistrate judge, the government introduced evidence to support the contention that Oxford was in reality the "alter ego" of RX, rather than a mere nominee. The government introduced evidence collected subsequent to the levy that Oxford and RX shared officers and directors in common, filed consolidated financial statements, shared a common floor in an office building and failed to follow many corporate formalities. Based on this information, the magistrate judge held that Oxford was in fact an alter ego of RX and thus the levies were not wrongful. Oxford timely filed a notice of appeal to this court.

II.

A.

A lien in favor of the United States arises with respect to all property and rights to property of a taxpayer upon failure to pay a tax liability after demand. *See* 26 U.S.C. § 6321. The IRS has broad authority to impose levies on property and rights to

property of taxpayers upon which liens have attached. *See* 26 U.S.C. § 6331(a). This power is not unlimited, however. For example, the IRS may not impose a levy on property until a thorough investigation of the status of such property has been completed. *See* 26 U.S.C. § 6331(j)(1). Similarly, a levy is wrongful if imposed upon property in which the taxpayer had no interest at the time the lien arose or thereafter or if the levy or sale pursuant to levy effectively destroys or otherwise irreparably injures a person's proprietary interest that is senior to the Federal tax lien. *See* 26 C.F.R. § 301.7426-1(b)(1). Congress has waived the sovereign immunity of the United States for suits claiming wrongful levy and has allowed persons other than the taxpayer to file suit against the United States for either damages or return of the property. *See* 26 U.S.C. § 7426.

The elements of a wrongful levy action under section 7426 are well settled -- to establish a wrongful levy claim a plaintiff must show (1) that the IRS filed a levy with respect to a taxpayer's liability against property held by the non-taxpayer plaintiff, (2) the plaintiff had an interest in that property superior to that of the IRS and (3) the levy was wrongful. *See Texas Commerce Bank-Fort Worth v. United States*, 896 F.2d 152, 156 (5th Cir. 1990). To prove that a levy is wrongful, (1) a plaintiff must first show some interest in the property to establish standing, (2) the burden then shifts to the IRS to prove a nexus between the property and the

taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer. *See Century Hotels v. United States*, 952 F.2d 107, 109 (5th Cir. 1992).

The Fifth Circuit, joined by the majority of the other circuits addressing the issue, has held that the IRS must prove a nexus between the property levied upon and the taxpayer by substantial evidence while a minority of circuits have required only proof by a preponderance of the evidence. *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 118 (2nd Cir. 1997) ("If the government satisfied that substantial evidence burden, meaning that the evidence was 'considerably more than a preponderance but less than clear and convincing proof' the plaintiff would have the 'ultimate burden' to prove that the levy was wrongful.") (*citing Century Hotels*, 952 F.2d at 109). The policy behind requiring such a heightened standard of proof is that the government has unique access to the information it used as a basis for its levy and, after an opportunity to fully develop the factual record, fairness mandates that the government come forward with substantial evidence of the connection between the property levied upon and the taxpayer. *See Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.C. Cir. 1980) ("Considerations of fairness impel us to conclude that once the factual record has been fully developed over time . . . the government must establish its asserted nexus between

taxpayer and a third party by substantial evidence."); *Flores v. United States*, 551 F.2d 1169, 1175-76 (9th Cir. 1977) ("Principles of fair play and common sense dictate the result which we reach.").

B.

In the present case, the IRS issued a levy against multiple bank accounts in the name of Oxford. The notice of levy indicated that the levy was being imposed on funds of Oxford as "nominee, transferee, alter ego, agent and/or holder of a beneficial interest of taxpayer RX Staffing Corporation." The levy applied to two bank accounts - the so-called "2020 account" and the so-called "2069 account." According to the field notes of Wayne Honeycutt, the revenue officer responsible for issuing the notice of levy, the levy was issued against Oxford's accounts because funds owed to RX were transferred to Oxford's 2020 account -- making this "a possible case for either a DBA [Doing Business As] levy or a NOMINEE levy." At the evidentiary hearing, Honeycutt testified that at the time of the levy the only information he had to support a levy on Oxford was the direct wiring of funds into the 2020 account. Honeycutt further testified that at the time of the levy, he had no information with respect to the officers, directors, accounting methods, tax returns or employees of either RX or Oxford. Before the magistrate judge, however, the government contended that the levy against Oxford's accounts was not wrongful because Oxford was the "alter ego" of RX.

While related, the concepts of "nominee", "transferee", and "alter ego" are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability. "A nominee theory involves the determination of the true beneficial ownership of property. An alter ego theory focuses more on those facts associated with a 'piercing the corporate veil' analysis. In contrast, a transferee theory requires (1) an intent to defraud the Internal Revenue Service as a creditor or (2) a transfer without consideration which rendered the taxpayer insolvent. These issues are fact-intensive and involve imprecise legal rules." WILLIAM D. ELLIOT, FEDERAL TAX COLLECTIONS, LIENS AND LEVIES ¶ 9.10[2] (2nd Ed. 2000). Specific property in which a third person has legal title may be levied upon as a nominee of the taxpayer if the taxpayer in fact has beneficial ownership of the property. *See, e.g., Towe Antique Ford Foundation v. Internal Revenue Service*, 791 F. Supp. 1450, 1454 (D.Mont.1992), *aff'd w/o opinion*, 999 F.2d 1387 (9th Cir. 1993).[1] Under the alter ego doctrine, however, all the assets of an alter ego corporation may be levied upon to satisfy the tax

---

[1]The court in *Towe* listed the following factors that are generally considered in determining nominee status: "(a) No consideration or inadequate consideration paid by the nominee; (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) Close relationship between transferor and the nominee; (d) Failure to record conveyance; (e) Retention of possession by the transferor; and (f) Continued enjoyment by the transferor of benefits of the transferred property." *Towe Antique Ford Foundation*, 791 F. Supp. at 1454 (*citing United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031 (10th Cir. 1974)).

liabilities of a delinquent taxpayer-shareholder if the separate corporate identity is merely a sham, i.e., it does not exist independent of its controlling shareholder and that it was established for no reasonable business purpose or for fraudulent purposes. *See United States v. Jon-T Chemicals*, 768 F.2d 686 (5th Cir. 1985).[2] Cause to believe that a third party is holding particular property of the taxpayer as a nominee, without cause to believe alter ego status, justifies a levy upon the property of the third party only with respect to that specific property held as a nominee.

At the evidentiary hearing, the magistrate judge found that the government had introduced substantial evidence of alter ego status, e.g., that Oxford and RX shared officers and directors in common, that they shared office space and telephone numbers, that corporate formalities were rarely if ever followed and that one individual, Robert Cheney, exercised *de facto* control over both

_____

[2]While adopting a totality of the circumstances test, this circuit has developed a non-exhaustive list of factors to consider: (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities. *See Century Hotels*, 952 F.2d at 110 n.5 (5th Cir. 1992).

corporations. Based on this evidence, the magistrate judge determined that Oxford was, in fact, the alter ego of RX and thus the levy was not wrongful. The magistrate judge did not apply the traditional wrongful levy burden shifting analysis described in *Texas Commerce*, however. Rather, the magistrate judge looked solely at the evidence before it, based on a fully developed record, to determine whether in fact Oxford was the alter ego of RX.

It is not possible to determine from the record whether application of the proper burden-shifting framework to the present case would have produced a different result. It is clear that the property levied upon was in the hands of Oxford, as the bank accounts were clearly registered in the name of Oxford and not in the name of RX. Thus, the burden shifted back to the government to prove a nexus between Oxford's bank accounts and the taxpayer at the time of the trial by substantial evidence.

The sole evidence introduced by the IRS to justify the levy at the time the levy was imposed was the tracing of specific funds owed to RX to Oxford's 2020 account. Based solely on this information, the government levied upon funds in both the 2020 account and the 2069 account. As noted by Honeycutt, such tracing possibly justified a nominee levy on the 2020 account (as Oxford could have been holding funds of RX as its nominee) but alone was insufficient to support an alter ego levy on all the assets of Oxford. That the government may have subsequently compiled

sufficient facts to establish alter ego status by substantial evidence is irrelevant to the issue of whether it had grounds to believe alter ego status at the time of the levy. Based on the record before us, it appears that at the time of the levy, the IRS may have had cause to believe that Oxford held property of RX as a nominee, but not cause to believe that RX was Oxford's alter ego. At that time the 2020 account appears to have been the only Oxford account that the IRS had cause to believe held property of the taxpayer, RX. If that was the case, the levy upon the 2069 account would have been wrongful under section 7426 for lack of cause at the time of the levy to believe that the 2069 account held funds of the taxpayer as a nominee.

While not dispositive, the IRS's failure to follow its own internal operating procedures is a further indication that it did not have cause to believe that RX was the alter ego of Oxford at the time the levy was imposed.[3] IRS internal operating procedures

---

[3]As a general rule, the internal operating procedures of the IRS as described in the Internal Revenue Manual do not create rights in the taxpayer and thus a violation of these procedures does not establish a cause of action for the taxpayer. *See United States v. Caceres*, 440 U.S. 741, 752 (1973); *Cargill, Inc. v. United States*, 173 F.3d 323, 340 n.43 (5th Cir. 1999). A corollary to this broad rule has developed however -- that internal operating procedures intended to protect a citizen's constitutional rights can establish a cause of action. *See, e.g.*, *United States v. McKee*, 192 F.3d 535, 544 (6th Cir. 1999) ("If the IRS's internal operating procedures afford anything less than faithful adherence to constitutional guarantees, then public confidence in the IRS will necessarily be undermined"); *United States v. Horne*, 714 F.2d 206, 207 (1st Cir. 1983) (per curiam). Since we are remanding to apply the proper shifting burden of proof, we need not address whether the failure to follow section 5.12.1.33 of the Internal Revenue

provide:

> Do not file a NFTL [Notice of Federal Tax Lien] in the name of an alter ego without legal review, advice and written direction from District Counsel as to:
>
>> the need for a supplemental assessment,
>> a new notice and demand, and
>> the language to be incorporated in the NFTL and levy.

INTERNAL REVENUE MANUAL § 5.12.1.33. Although Honeycutt did consult a more experienced revenue agent prior to imposing the levy, it is undisputed that he did not receive the written approval of District Counsel prior to filing the notice of levy. Rather, Honeycutt testified that he did not distinguish between the terms "nominee levy" or "alter ego levy" and did not request advice from district counsel as to which to pursue, although the manual specifically recommends pursuing other options prior to imposing an alter ego levy. This failure to pursue the internal policies further indicates that the IRS did not have cause to impose an alter ego levy at the time the levy was imposed.

However, because the magistrate judge did not apply the proper burden-shifting framework, it is not possible to determine based on the record as developed whether and to what extent the IRS had developed cause to believe alter ego status at the time the levy was imposed. Further, it is not possible to determine if the IRS alternatively developed substantial evidence of nominee liability at the time of the evidentiary hearing sufficient to prevent a

---

Manual renders the levy *per se* wrongful for purposes of section 7426.

finding of a wrongful levy under *Texas Commerce*.  Accordingly, we vacate the magistrate judge's judgment and remand the case for further proceedings to apply the proper burden shifting framework to determine (1) if the IRS proved a nexus by substantial evidence and (2) if Oxford can then prove that the levy was otherwise wrongful, e.g., that the levy was imposed without a sufficient evidentiary basis to do so.  *See Smithwick v. Green Tree Financial Services Corp.*, 121 F.3d 211, 215 (5th Cir. 1997) (remanding to apply the proper presumption); *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995) (remanding to magistrate judge to reinstate improperly dismissed cause of action); *cf. United States v. Stricklin*, 591 F.2d 1112, 1124 (5th Cir. 1979) (remanding to apply proper burden-shifting framework).  In so doing, we state no opinion as to the magistrate judge's factual finding of alter ego status at the time of evidentiary hearing.


### III.

In the present case, after Oxford established standing, the magistrate judge erred in failing to place the burden of proof on the IRS to demonstrate a nexus between Oxford's property and RX by substantial evidence and then shift the burden back to Oxford to prove the levy was nonetheless wrongful, and thus failed to make the requisite factual determinations necessary to properly determine wrongful levy status.  Accordingly, we VACATE the

judgment of the magistrate judge and REMAND the case for further proceedings consistent with this opinion.

VACATED AND REMANDED.

DENNIS, Circuit Judge, concurring:

I agree that the magistrate judge erred in failing to apply the proper burden-shifting analysis and that the case should be remanded so that Oxford may have the opportunity to demonstrate that the levy was wrongful. I write separately because this appeal presents an issue that courts have had few opportunities to address, viz., the evidentiary criterion necessary to sustain the IRS's initial imposition of a levy upon property. It is indisputable that a levy is a seizure of property. *See* 26 U.S.C. § 6331(b) ("the term 'levy' as used in this title includes the power of distraint and seizure by any means"). The Supreme Court has clearly held that seizures of property, whether made pursuant to a search or not, are subject to the limitations of the Fourth Amendment regardless of any additional protections that may be afforded by the Fifth Amendment. *See Soldal v. Cook County*, 506 U.S. 56, 63 (1992) ("our cases unmistakably hold that the [Fourth] Amendment protects property as well as privacy."); *United States v. Paige*, 136 F.3d 1012, 1016 (5th Cir. 1998). Thus, it appears that as a threshold matter the Fourth Amendment requires that the IRS have probable cause to believe that the property to be levied upon is actually owned by the delinquent taxpayer.

The Supreme Court has never directly addressed the issue of whether the existence of such probable cause is necessary before the IRS may levy upon property. However, the Court has held that

-14-

a judicial warrant is mandated under the Fourth Amendment before the IRS may enter a taxpayer's home to seize assets pursuant to a properly issued levy. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977). Although the Court did not directly address the issue, in *G.M. Leasing* it assumed that a showing of probable cause to believe the targeted property belonged to the taxpayer was necessary before a levy thereon may properly issue, stating:

> We therefore approach this case accepting the Court of Appeals' determinations that the assessments and levies were valid and that petitioner was Norman's alter ego. Those facts necessarily <u>establish probable cause to believe that assets held by petitioner were properly subject to seizure in satisfaction of the assessments.</u> Petitioner does not claim that there was no probable cause to believe that the automobiles were held by petitioner, nor does it claim that there was no probable cause to believe that its offices would contain other seizable goods. <u>There being probable cause for the search and seizures</u>, the only questions before the Court are whether warrants were required to make "reasonable" either the seizures of the cars or the entry into and seizure of goods in the cottage.

*Id*. at 351 (emphasis added).

The circuits that have addressed this issue have consistently recognized this implicit holding in *G.M. Leasing* and have held that the IRS must make a showing of probable cause at the time a levy is imposed to comply with the Fourth Amendment. *See Valley Finance*, 629 F.2d 162, 171 (D.C. Cir. 1980); *Flores v. United States*, 551 F.2d 1169, 1174 (9th Cir. 1977). Specifically, the Ninth Circuit in *Flores* held:

> We start by observing that just as police need probable

cause to believe that evidence sought is to be found in the area to be searched and that such evidence relates to a crime, so, too, the Internal Revenue Service needs probable cause at the time assets are initially seized to connect those assets to a taxpayer with outstanding taxes due.

*Flores*, 551 F.2d at 1174.  In describing the policy behind such a requirement, the Ninth Circuit noted:

Were this not the case, the taxes of a California resident could be collected from a totally unrelated person in New York, and the New Yorker would be forced to prove a negative fact about which he has absolutely no information, i.e., that the Californian has no interest in his property.

*Id*. at 1175 (citing *Elkins v. United States*, 364 U.S. 206, 218 (1960) ("as a practical matter it is never easy to prove a negative")).  The District of Columbia Circuit has employed similar reasoning.  *See Valley Finance*, 629 F.2d at 171 n. 19 ("A government showing of probable cause, familiar in other Fourth Amendment settings, can rebuff immediate challenges to the propriety of a levy").

Although not directly addressing the present issue, this circuit, in addition to many others, has cited *Flores* and *Valley Finance* with approval.  *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 118 (2nd Cir. 1997); *Texas Commerce Bank-Fort Worth v. United States*, 896 F.2d 152, 156 (5th Cir. 1990); *Security Counselors, Inc. v. United States*, 860 F.2d 867, 869 (8th Cir. 1988); *Morris v. United States*, 813 F.2d 343, 345 (11th Cir. 1987); *Arth v. United States*, 735 F.2d 1190, 1193 (9th Cir. 1984); *United*

*States v. Bailey*, 707 F.2d 19, 21 (1st Cir. 1983). The other courts that have addressed this issue directly are markedly consistent in holding that the Fourth Amendment applies to all levies of property by the government, including tax levies. *See, e.g.*, *Andrews v. Crump*, 984 F. Supp. 393 (W.D.N.C. 1996); *Colello v. United States Securities and Exchange Commission*, 908 F. Supp. 738 (C.D.Cal. 1995); *Matter of Stubblefield*, 810 F. Supp. 277 (E.D.Ca. 1992); *TMG II v. United States*, 778 F. Supp. 37 (D.D.C. 1991) (Oberdorfer, J.); *Peters v. Sjoholm*, 631 P.2d 937 (Wa. 1981).[4]

Such a finding is further supported by the background and history of the Fourth Amendment itself. The Supreme Court has noted that "one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance." *G.M. Leasing*, 429 U.S. at 355. Commentators have generally agreed, finding that the intended purpose of the Fourth Amendment was to prevent abusive enforcement of the tax laws through the baseless seizure of property. *See*

---

[4]This circuit has stated in dicta that tax seizures that do not involve the invasion of one's premises do not violate the Fourth Amendment. *See Baddour, Inc. v. United States*, 802 F.2d 801, 807 (5th Cir. 1986). Such an argument was subsequently rejected by the Supreme Court in *Soldal*. Regardless, *Baddour* was a case brought under 42 U.S.C. § 1983 and not under section 7426 of the Internal Revenue Code. Thus, the holding in *Baddour* is solely that, at the time, the application of the Fourth Amendment to non-invasive tax levies was not sufficiently "clearly established" to overcome qualified immunity for purposes of section 1983.

*generally* Erin Suzanne Enright, Comment, *Probable Cause for Tax Seizure Warrants*, 55 U.Chi.L.Rev. 210, 234 (1988).

Accordingly, I believe that the Fourth Amendment applies to tax levies and mandates that the IRS develop probable cause to believe the property being levied upon is in fact the property of a delinquent taxpayer subject to a lien at the time the levy is imposed. Thus, because the Fourth Amendment applies to a levy as a seizure of property, a levy made without probable cause to believe the property seized belongs to the taxpayer amounts to an unconstitutional seizure and is thus wrongful for purposes of section 7426 regardless of any *post hoc* justification offered by the IRS. Failure to insist upon such probable cause as a prerequisite to an IRS levy would flout the principles of fairness and privacy embodied in the Fourth Amendment and the Supreme Court decisions in *G.M. Leasing* and *Soldal*.[5]

---

[5]Such a requirement applies to traditional tax enforcement proceedings, however, and not to emergency "jeopardy assessments" where if "the Secretary believes that the assessment or collection of a deficiency . . . will be jeopardized by delay, he shall . . . immediately assess such deficiency." 26 U.S.C. § 6861. "A taxpayer against whom a jeopardy assessment has been made may seek administrative review of the reasonableness and appropriateness of the assessment by requesting it within 30 days after the day on which the taxpayer is furnished a written statement of the information upon which the IRS relies in making a jeopardy assessment . . . [f]ollowing administrative review, the taxpayer may obtain expedited judicial review of the reasonableness of the IRS's determination that collection of the taxes would be jeopardized by delay and of the propriety of the amount assessed." *Humphreys v. United States*, 62 F.3d 667, 670 (5th Cir. 1995) (per curiam). Such special procedures were implemented by Congress in response to the Supreme Court's questioning of the constitutionality of jeopardy assessments without such prompt post-

This does not mean that a third person may refuse to comply with a levy on the ground that it is not based on probable cause. *See United Sand & Gravel Contractors v. United States*, 624 F.2d 733 (5th Cir. 1980). A third person has only two possible defenses or justifications for failure to comply with a levy: (1) that the third person is not in possession of property of the taxpayer or (2) that the property is subject to a prior judicial attachment or execution. *See United States v. National Bank of Commerce*, 472 U.S. 713, 727 (1985). This is because "levy procedures do not determine ownership rights, and . . . third parties whose assets are 'wrongfully' seized may apply to the government for the return of that property." *Texas Commerce*, 896 F.2d at 157. Thus, a wrongful levy action under section 7426 is the exclusive remedy of a third person whose property has been seized without probable cause of a nexus between the property and the tax debtor. *See United Sand & Gravel*, 624 F.2d at 739.

On remand, I believe that if Oxford can demonstrate that the IRS levied upon its property without having developed probable cause at the time the levy was imposed to believe that the property being levied upon was, in reality, the property of RX, then the levy was wrongful under section 7426.

---

seizure hearings. *See* BORIS I. BITTKER AND LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES AND GIFTS ¶ 111.6.3 (3rd ed. 1999) (citing *Commissioner v. Shapiro*, 424 U.S. 614 (1976); *Laing v. United States*, 423 U.S. 161 (1976)). There is no indication that the IRS pursued a jeopardy assessment in the present case, however.