NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 22, 2015
Decided June 11, 2015

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 14-1540 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 08-cr-00115 |
| *v.* | |
| CASEY SZAFLARSKI, *Defendant*, | Ronald A. Guzmán, *Judge*. |
| APPEAL OF: CAROL SZAFLARSKI. | |

O R D E R

After Casey Szaflarski was found guilty in federal court of running an illegal gambling business and various tax crimes, the district court entered a preliminary order of forfeiture against his Chicago residence. His sister Carol Szaflarski asserted a third-party claim alleging an ownership interest in the property, but the district court denied her claim. She now appeals the final order of forfeiture. We affirm.

## I. Background

In May 2001, Casey Szaflarski, his mother Irene, and his sister Carol (the petitioner) entered into a contract to purchase a residential property at 351 West 28th Place (28th Place) in Chicago. The purchase price was $243,000. All three of them filled out loan applications for a mortgage, which they obtained in the amount of $180,000. They paid the balance of the purchase price, $63,280, in cash. The warranty deed, which was issued the following month, listed each of their names.

Neither Carol (sister) nor Irene (mother) ever resided at 28th Place, which served as Casey's primary residence. Although Casey obtained a divorce during this period, he continued to reside at 28th Place with his ex-wife and children for the next eleven years. In addition to living there, Casey paid, from his own income, all expenses related to the home, including the mortgage, rent, utilities, and maintenance. During several relevant years (2001, 2003, 2004, and 2005), Casey took a mortgage interest deduction for 28th Place on his personal income tax return.

In September 2005, title to 28th Place was transferred into a land trust of which Carol was the sole beneficiary. According to Carol, the trust was established to remove Casey's name from the title in the event that a civil suit was brought against him by a creditor. The parties stipulated that Carol did not provide any consideration in connection with this transfer. Notwithstanding the trust, Casey continued to pay the mortgage and household expenses and to reside at 28th Place with his family. There is no evidence that Carol paid a single expense related to the home prior to 2008.

This arrangement changed in November 2008 when Casey began to suspect that he had become a target of investigation by authorities for his involvement in an illegal gambling ring in which several participants had previously been indicted. His suspicions arose when the government released discovery materials related to those indictments which named Casey as an additional participant in the gambling ring. The following month, Casey began the practice of sending checks to Carol, who would deposit the funds and then issue a separate check for the mortgage. Almost a year later, after the government executed a warrant on his person, Casey began marking his checks to Carol as "rent" even though the parties never executed a written rental agreement. Carol declared rental income related to 28th Place for the first time in her 2009 tax return, which she filed in April 2010. By that point, Casey had already been indicted and named in a forfeiture allegation.

In December 2010, a federal jury convicted Casey on all counts on which he was named. In October 2011, the district court entered a preliminary order of forfeiture against him for his interest in 28th Place. The order required any party claiming an interest in 28th Place to file a claim with the district court; two months later, Carol filed such a claim.

In April 2013, at a hearing on the forfeiture, Carol testified that she had an ownership interest in the property but Casey did not because he was merely a renter. She stated that her mother contributed the majority of the funds for purchasing the property from proceeds received from the sale of a condominium that Carol owned with her mother. Although she was not able to produce any documentation substantiating her account, Carol testified that she contributed a small amount to the down payment, while Casey contributed no money.

The government countered Carol's testimony with evidence showing that, at the time of purchase, Carol had $4,000 in cash in various bank accounts while Casey had $128,000 in savings and a stated monthly income of $10,000. In response to questions from the district court, Carol stated that all the proceeds from the condominium were placed in Casey's bank account, and that these proceeds alone were used to purchase 28th Place with no contribution from Casey other than the use of his bank account.

The district court regarded Carol's testimony as "illogical and contradictory" and allowed the government to proceed with forfeiture on the grounds that Carol was a nominee for Casey under Illinois law because she held legal title in the property for Casey's benefit and did not take any actions consistent with true ownership. *United States v. Szaflarski*, No. 08 CR 115 at *8 (N.D. Ill. Feb. 14, 2014).

## II. Analysis

We review the factual findings of a final order of forfeiture for clear error and review *de novo* "whether those facts adduced at a forfeiture hearing constitute proper forfeiture." *United States v. Swanson*, 394 F.3d 520, 528 (7th Cir. 2005). Illinois law determines whether Carol has a legally cognizable interest in the property, and the federal foreclosure statute (21 U.S.C. § 853) establishes whether she has demonstrated that the forfeiture was invalid due to the assertion of a valid property interest. 21 U.S.C. § 853(n).

Carol argues on appeal that Casey abdicated any property interest when he conveyed 28th Place into an Illinois Land Trust in September 2005. The government concedes that a trust would normally remove the property beyond its reach, but contends that Carol was merely acting as Casey's nominee by allowing him to park 28th Place in her name without relinquishing the benefits of ownership of the property. The district court agreed with the government and allowed forfeiture on this ground.

Black's Law Dictionary defines a "nominee" (in the context of property law) as a "party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Black's Law Dictionary* 1149 (9th ed. 2009). Unlike a party with a cognizable property interest, a nominee cannot claim a viable third-party interest sufficient to render a forfeiture invalid. *See People v. Chicago Title and Trust Co.*, 389 N.E.2d 540, 544 (Ill. 1979); *United States v. Herrero*, 893 F.2d 1512, 1542 (7th Cir. 1990) (holding that property held by another as nominal owner for benefit of a drug dealer subject to forfeiture under 21 U.S.C. § 853), *abrogated on other grounds by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990). Illinois courts have never articulated a detailed standard for what constitutes a nominee but instead focus on the "realities of ownership" rather than on formal aspects of title. *Chicago Trust & Title*, 389 N.E.2d at 544. Under Illinois law, the key elements of ownership are "control and the right to enjoy the benefits of the property." *Id*. In the absence of specific guidance from Illinois courts, we follow the practice of other federal courts by examining various factors to determine whether a titled owner was merely acting as the nominee for another. These (non-exhaustive) factors are consistent with "the realities of ownership" and provide a viable framework to determine the relevant property interests under Illinois law.

Courts consider several factors in determining whether a titleholder is actually serving as a nominee for the benefit of another, including whether: (1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property. *See Oxford Capital Corp v. United States*, 211 F.3d 280, 284 n.1 (5th Cir. 2000).

Here, each of these factors supports the district court's finding that Carol merely acted as Casey's nominee. The pair were siblings; Carol stipulated that she paid no consideration for the trust; she testified that the trust was established in order to avoid civil liability for Casey; there was never a written rental agreement between the parties;

and, Casey continued to reside in 28th Place with his ex-wife and children even after the establishment of the trust.

Carol argues that the district court got it wrong and cites language from our holding in *United States v. Swan*, 467 F.3d 655, 658 (7th Cir. 2006), where we recognized that transactions among relatives are not immediately suspect but are often used to reduce transactional costs. *Swan* was a tax case in which the government sought to foreclose on a pair of tenants on the grounds that they were the actual owners of a residence. In *Swan*, we agreed with the district court that the government was precluded from foreclosing in that case, but we did so because the government had not offered sufficient evidence to support its theory—not because the theory was faulty as a matter of law.

The evidence suffices to establish that Carol was the nominee. The fact that she was named as a beneficiary is not sufficient by itself to establish a property interest absent any other indications of ownership on her part. *Chicago Title and Trust Co.*, 389 N.E.2d at 544. Carol claimed that her mother—and not Casey—paid for 28th Place with proceeds from the sale of another piece of property. The district court was rightly skeptical of this claim when confronted with evidence that the $63,200 down payment was paid out of Casey's bank account. Further, there is no evidence that Carol served as Casey's landlord in any meaningful sense. There was no written rental agreement, and all expenses on the property were paid by Casey.

There is also the matter of timing. At each turn, the actions taken by Carol and Casey correspond exactly to various developments in Casey's criminal investigation. Casey began making payments to Carol only in 2008 after discovering that he was subject to investigation rather than in 2005 following the creation of the trust instrument. He began marking the checks as rent only after various search warrants had been executed against him. Despite her purported ownership, Carol never expended her own funds for repairs or maintenance, nor did she take an interest deduction on the property until after the government initiated its forfeiture action. Taken together, these factors support the district court's finding that, rather than an actual owner, Carol was merely Casey's nominee for the purposes of thwarting a forfeiture action against him.

Finally, Carol also forwards the novel argument that the Illinois statute of limitations for fraudulent transfer bars any finding that Carol was Casey's nominee. In order for this argument to prevail, we would have to view the satisfaction of Illinois' fraudulent conveyance law as a condition precedent for determining the property

interest under Illinois law. There is no such requirement; statutes of limitations only relate to actions brought under the particular statute. This is not an action for fraudulent transfer and so the period of limitation relevant to that statute does not apply here.

The district court committed no error in holding that Carol was serving as Casey's nominee and we **AFFIRM** its judgment.