# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2024

Lyle W. Cayce
Clerk

No. 23-40373

In the Matter of JMV Holdings, L.L.C.,

*Debtor*,

Jennifer Ruff,

*Appellant*,

*versus*

Suzann Ruff; Christopher Moser,

*Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-321

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Per Curiam:[*]

This case is one of several chapters in a family saga concerning the estate of Arthur Ruff, who died in 1998 and left considerable assets to his widow, Appellee Suzann Ruff. To manage those assets, Suzann relied on one

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40373

of her sons, Michael Ruff.[1] A family dispute ensued, prompting more than a decade of litigation alleging fraud and financial misconduct, with trips to probate, arbitration, bankruptcy, and other state courts.[2]

At this stage, Jennifer Ruff, Michael's wife, appeals a bankruptcy court's decision about the circumstances surrounding the purchase and sale of her prior home. For the reasons that follow, we AFFIRM the bankruptcy court's findings and conclusions.

## I.    Background

In 2007, Suzann and Michael formed the Ruff Management Trust (the "Trust"). Suzann was the Trust's settlor and primary beneficiary, and Michael was its trustee. Suzann transferred almost all her assets to the Trust. By 2009, however, Suzann suspected that Michael was abusing his fiduciary role as trustee. As conflicts arose, Michael resigned as trustee. In exchange for his resignation, Michael persuaded his mother to sign a Family Settlement Agreement, requiring Suzann to release any claims that she had against Michael.

Because this case involves res judicata, we provide background on two lawsuits. Specifically, this appeal concerns a bankruptcy proceeding, *In re JMV Holdings, LLC*, No. 18-42552, (Bankr. E.D. Tex. Nov. 9, 2018) (the "Main Case"), and its adversary proceeding, *Ruff v. Ruff*, Adv. Case No. 21-4003, (Bankr. E.D. Tex. Jan. 11, 2021) (the "Adversary Case").

---

[1] For clarity, we refer to Suzann, Michael, and Jennifer Ruff by their first names as the lower courts have done.

[2] *See, e.g., Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353 (Tex. App.—Dallas Feb. 11, 2022, *pet. denied*); *Ruff v. Ruff*, No. 11-20-00122-CV, 2021 WL 388707 (Tex. App.—Eastland Feb. 4, 2021, *pet. denied*); *Ruff v. JMV Holdings*, No. 17-7279 (Dist. Ct., Dallas Cnty., Tex. Dec. 18, 2017); *Ruff v. Ruff*, No. 05-13-00317-CV, 2013 WL 2470750 (Tex. App. June 10, 2013).

No. 23-40373

## A. Main Case

The Main Case stems from Suzann's probate dispute. *See In re Ruff Mgmt. Trust*, No. PR-11-02825-1 (Probate Ct., Dallas Cnty., Tex. Aug. 19, 2011) (the "Probate Case"). She alleged that Michael abused his position as trustee by swindling Suzann out of millions of dollars through a series of fraudulent transactions. Michael forced the dispute into arbitration.

After several years, an arbitration panel issued a final award and judgment for Suzann, finding that Michael had defrauded Suzann, breached his fiduciary duties as the trustee, and committed negligence. The arbitration panel rejected Michael's affirmative defenses of release and indemnity based on the Family Settlement Agreement, determining that Michael had fraudulently induced Suzann into signing that Agreement. The panel awarded Suzann $49 million in actual damages, $3.9 million in attorneys' fees and costs, and $12.8 million in prejudgment interest.[3] Importantly, the arbitration award provided the following:

> A constructive trust exists and is imposed in favor of Suzann Ruff on Michael Ruff's interests, of whatever nature, in any entity which he formed or invested, in whole or in part with monies or property misappropriated from, and originating with Suzann Ruff in all capacities, which the Panel finds includes, but is not limited to, any interest of whatever nature Michael has in the entities listed on Exhibit "A" to the final Award attached hereto and made a part hereof for all purposes (Exhibit "A"). Michael Ruff shall hold his ownership interests in such entities as constructive trustee for the benefit of Suzann

---

[3] A probate court entered a final judgment in favor of Suzann, incorporating the terms of that arbitration award, which a state appellate court subsequently affirmed. *See Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *15 (Tex. App.—Dallas Aug. 11, 2020, *pet. denied*).

3

Ruff, and Suzann Ruff shall be entitled to a lien against such ownership interests to enforce this Award.

One of the entities listed in Exhibit "A" is JMV Holdings, LLC ("JMV"). Michael formed JMV in November 2009—one month after he fraudulently induced his mother into signing the Family Settlement Agreement. Then, through JMV, Michael bought a property in Dallas, Texas (the "Joyce Way Property"). Michael claimed that he paid for the property using his personal checking account, but nonetheless bought the property in JMV's name.

As to the Main Case, in 2018, JMV filed for bankruptcy claiming a single asset—the Joyce Way Property.[4] According to Michael, the purpose of the bankruptcy was to prevent Suzann from reaching JMV's assets upon collection of the arbitration award. Both Jennifer and Suzann filed a proof of claim to JMV's bankruptcy estate. Suzann asserted an unsecured claim for $65 million and an equitable lien on JMV's assets. Jennifer asserted a secured claim for $743,811.82 based on a purported deed of trust that she filed against the Joyce Way Property on the same day that JMV filed for bankruptcy.

Subsequently, a bankruptcy court issued an order allowing JMV's bankruptcy trustee, Appellee Moser, to sell the Joyce Way Property under 11 U.S.C. § 363 (the "Sale Order"). In the Sale Order, the bankruptcy court clarified that "the liens, claims and encumbrances" asserted by both Jennifer and Suzann "attach to the residual proceeds" of the sale to the same extent that they attach to the Joyce Way Property. Ultimately, the Joyce Way

---

[4] Initially, JMV filed a voluntary petition under Chapter 11 of the Bankruptcy Code, but it was later converted to liquidation case under Chapter 7. As such, Appellee Christopher Moser is the Chapter 7 trustee of JMV's bankruptcy estate.

No. 23-40373

Property sold for approximately $420,000, and Moser currently holds the proceeds of the sale.

## B. Adversary Case

In 2021, Jennifer sued Suzann and Moser regarding the proof of claims against JMV's assets. Specifically, Jennifer requested a declaratory judgment stating that: (1) neither the constructive trust in favor of Suzann, nor the equitable lien imposed by the arbitration judgment is enforceable against the sale proceeds of the Joyce Way Property, (2) JMV and its assets are Jennifer's separate property, and (3) Jennifer is a third-party beneficiary of the Family Settlement Agreement. Jennifer also sought an order rejecting Suzann's claim against JMV.

Following trial, the bankruptcy court issued its findings and conclusions regarding Jennifer's claims. The bankruptcy court determined that Jennifer was not a third-party beneficiary of the Family Settlement Agreement, and Jennifer could not benefit from JMV's purchase of the Joyce Way Property, as Michael had used his separate funds to purchase it.[5] As such, the bankruptcy court held that Suzann is entitled to recover the sale proceeds of the Joyce Way Property. In addition, the bankruptcy court held that Jennifer's purported deed of trust was a preferential transfer under 11 U.S.C. § 547, and the court partially sustained Moser's objection to Jennifer's proof of claim, leaving Jennifer with a $15,000 unsecured claim against JMV.

---

[5] Jennifer contended that she was the sole owner of JMV such that the judgment should not reach it. Michael contended that he gave Jennifer a portion of his alleged separate funds that he earned as a bonus through his personal services and marketing, not from any fraud on Suzann. The bankruptcy court found otherwise.

Jennifer appealed the decision in the Adversary Case but to no avail because the district court affirmed the bankruptcy court. Jennifer appeals again.

## II.   DISCUSSION

Under the bankruptcy appeals process, we are the second level of appellate review, though we perform the same task as the district court. *In re U.S. Abatement Corp.*, 79 F.3d 393, 397 (5th Cir. 1996). A bankruptcy court's "findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008). "We may affirm on any ground supported by the record, including one not reached by the district court." *Hammervold v. Blank*, 3 F.4th 803, 813 (5th Cir. 2021) (quoting *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014)).

Jennifer raises a myriad of issues on appeal regarding (A) the preclusive effect of the Main and Probate Cases on her Adversary Case; (B) the source of purchase funds and title to the Joyce Way Property; and (C) the partial roadblock of her claim to JMV's assets. We discuss each of these in turn.

### A. Res Judicata

Jennifer asserts that Suzann's claim to an equitable interest in the sale proceeds of the Joyce Way Property is barred by the doctrine of res judicata because Suzann did not object to the arbitration judgment, or otherwise litigate the sale of the Joyce Way Property in the Main Case. Suzann and Moser suggest that this argument is borderline frivolous. In addition, Jennifer contends that she is a third-party beneficiary of the Family Settlement Agreement, and thus, Suzann released any claims against Jennifer and JMV. Suzann and Moser counter by noting the absurdity in Jennifer's attempt "to enforce a contract induced by fraud."

Claim preclusion, the doctrine of res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). To determine whether litigation is barred by claim preclusion, we consider whether: (1) the parties are identical or in privity in both suits, (2) the judgment in the prior action was rendered by a court of competent jurisdiction, (3) the prior action was concluded by a final judgment on the merits, and (4) the same claim or cause of action was involved in both actions. *Test Masters*, 428 F.3d at 571; *see In re Paige*, 610 F.3d 865, 870 (5th Cir. 2010). To determine whether two suits involve the same cause of action, we ask whether the facts in the two suits are based on the same nucleus of operative facts. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (quotation and citation omitted).

Jennifer does not dispute any specific elements of the four-pronged test with respect to Suzann's equitable interest claim. Instead, Jennifer suggests that the Sale Order is a prior judgment entitled to preclusive effect because Suzann "could have" litigated the sale of Joyce Way Property but did not do so. Specifically, Jennifer argues that Suzann "voluntarily assented to the sale" of Joyce Way Property without claiming an equitable interest and thus should be barred by res judicata. As evidenced by her lack of factual and legal support, Jennifer's argument is indeed frivolous.

The Sale Order preserved the "liens, claims, and encumbrances" asserted by both Suzann and Jennifer by attaching those claims to the "residual proceeds" of the of Joyce Way Property. Unfazed, Jennifer ignores the Sale Order, despite the bankruptcy court's reliance on it, and the Sale Order is noticeably absent from the record on appeal.[6] By providing no

---

[6] Jennifer ignores that, as the Appellant, she has the burden of providing a complete appellate record. *See* FED. R. BANKR. P. 8009(b)(5) ("If the appellant intends to argue

legitimate analysis, Jennifer has failed to meet her burden of establishing claim preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); *Webb v. Town of St. Joseph*, 560 F. App'x 362, 366 (5th Cir. 2014) (noting that "the party urging res judicata has the burden of proving each essential element by a preponderance of the evidence."). Nothing in the record indicates that Suzann could or should have previously litigated her interest in the sale proceeds of the Joyce Way Property. Thus, the bankruptcy court correctly concluded that Suzann's equitable interest in the Joyce Way Property is not barred by res judicata.

In addition, Jennifer contends that she is a third-party beneficiary of the Family Settlement Agreement and thus, Suzann must release any claims against her or JMV. Specifically, Jennifer argues that she is not bound by the arbitration award and judgment because she was not a party in the Probate Case, and can nevertheless benefit from the Family Settlement Agreement that Michael had fraudulently induced Suzann to sign.

To be sure, close family relationships alone do not establish privity with a party in the original case or bind a nonparty to the judgment in that case. *See Cuauhtli v. Chase Home Fin. LLC*, 308 F. App'x 772, 773 (5th Cir. 2009) (quoting *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 863 (5th Cir. 1985)). Spouses are in privity with one another when, as here, the nonparty spouse's interest in an original suit derives from, and is closely aligned with, their spouse's interests. *See Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir. 1992). In this case, Jennifer's privity with Michael is not based solely

---

on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all relevant testimony and copies of all relevant exhibits."); *In re CPDC Inc.*, 221 F.3d 693, 698 (5th Cir. 2000) ("The burden of creating an adequate record [in a bankruptcy appeal] rests with the appellant, who may not urge an issue on appeal if he has failed to provide the appellate court with the requisite record excerpts.").

8

on their marriage. Instead, Jennifer shares Michael's interests concerning the arbitration award and subsequent final judgment. This is evidenced by Jennifer now claiming that she has an interest in the Family Settlement Agreement as an intended beneficiary. In the Probate Case, the arbitrators determined that Michael "fraudulently induced" the Family Settlement Agreement and cannot benefit from it or "any other alleged settlement agreements." And in the Adversary Case, Jennifer failed to consider how her own reliance on a fraudulent agreement belied her argument. Even if Jennifer could choose to be in privity when it suits her, nothing suggests that the Agreement releases her. Accordingly, we agree with the district and bankruptcy courts that Jennifer is barred from claiming any benefit of the Family Settlement Agreement.

## B. Joyce Way Property

Jennifer asserts that the bankruptcy court erred in finding that the Joyce Way Property was subject to the arbitration award and judgment. Specifically, Jennifer contends that the source of funds Michael used to purchase the property is separate from Michael's interests "in any entity in which he formed or invested, in whole or in part with monies misappropriated from" Suzann that were listed in Exhibit A. Suzann and Moser contend that Jennifer's argument is again frivolous.

In applying the clear-error standard to a bankruptcy court's fact findings, we will reverse only if, "'on the entire evidence, we are left with the definite and firm conviction that a mistake has been made.'" *In re Lopez*, 897 F.3d 663, 672 (5th Cir. 2018) (quoting *In re Am. Hous. Found.*, 785 F.3d 143, 152 (5th Cir. 2015)).

Because the bankruptcy court's fact findings regarding the purchase and title of the Joyce Way Property are supported by the record, no "mistake has been made." *In re Am. Hous. Found.*, 785 F.3d at 152. First, it is evident

that Michael purchased the Joyce Way Property in the name of JMV with his personal funds. But, according to Jennifer, she purchased the Joyce Way Property after Michael gave her a piece of his 3-million-dollar bonus. Jennifer never produced any documentation of this gift from Michael. Nor did she produce any documents establishing that Michael actually received that bonus. Nonetheless, Jennifer argues that her and Michael's trial and deposition testimony explain the source of funds to purchase Joyce Way Property. Jennifer has failed to show that the bankruptcy court erred in finding that the testimony was not credible.

The evidence purportedly corroborating the testimony of Jennifer and Michael is an alleged pre-marital agreement that they failed to produce, and the funds wired into Michael's bank account from an entity included in the arbitration award and judgment. To be clear, the arbitration award states that a constructive trust attaches to Michael's interests in "any entity which he formed or invested" funds or "property misappropriated from, and originating with Suzann Ruff, in all capacities" including but "not limited to any interest of whatever nature Michael has in the entities listed on Exhibit 'A,'" which includes JMV and ARS Investment Holdings, the entity he received the wire from. Indeed, the record shows that Michael's earnings, including those from JMV and ARS Investment Holdings, are reachable by Suzann. Thus, Jennifer's attempt to make an end run around the constructive trust is unpersuasive.

## C. Proof of Claim to JMV's Assets

Lastly, Jennifer contends that the bankruptcy court erroneously "disallowed" her proof of claim against JMV. Jennifer also contends that the Probate Case did not include JMV in the arbitration award and thus JMV is not subject to the constructive trust. Both arguments fail on the record. First, the bankruptcy court did not simply "disallow" Jennifer's proof of claim,

rather it sustained the Chapter 7 Trustee's objection in part, leaving Jennifer with an unsecured claim of $15,000 for JMV's bankruptcy counsel. Because we conclude that the bankruptcy court's finding that the testimony of Jennifer and Michael regarding the source of funds to purchase or maintain the Joyce Way Property was not credible is not erroneous, the majority of Jennifer's claim to JMV's assets is unsubstantiated. The deed of trust Jennifer filed within hours of JMV's bankruptcy petition is "fictitious" at best. Second, the arbitration panel explicitly stated that the constructive trust attaches to "whatever interest" Michael has in the entities listed on Exhibit A. Thus, the bankruptcy court correctly sustained Moser's objection to Jennifer's claim.

## III.    Conclusion

Based on our review of the briefs, record, and relevant pleadings, we AFFIRM the bankruptcy court's decision.